The decision of the district court will be affirmed.

J. Adams BRUCE, as President of Bruce's Juices, Incorporated, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20776.

United States Court of Appeals
Fifth Circuit.

Oct. 6, 1965.

Rehearing Denied Nov. 4, 1965.

Morison Buck, Tampa, Fla., for appellant.

Arnold D. Levine, Spec. Asst. U. S. Atty., Tampa, Fla., for appellee.

Before TUTTLE, Chief Judge, JONES, Circuit Judge, and GROOMS, District Judge.

JONES, Circuit Judge:

The appellant, J. Adams Bruce, was convicted on all of the charges of a four count indictment of conspiracy to violate 49 U.S.C.A. § 121,[1] and on all charges of a seventeen count mail fraud indictment.[2] The cases were consolidated for trial.

The appellant was a major stockholder, the president and a director of Bruce's Juices, Inc., which engaged in the processing and sale of citrus juices on an extensive scale throughout the United States and Canada. It operated a processing plant in Tampa, Florida, and maintained a warehouse at the plant and at other locations in the Tampa area. These warehouses were leased to Lee Terminal and Warehouse Corporation by Bruce's Juices, Inc., and processed juices of the Bruce company were stored in the warehouses, and warehouse receipts were issued by Lee. In the four count case (district court No. 6600) warehouse receipts were procured through fraud and were exchanged for order bills of lading issued by a steamship company and purported to receipt for canned citrus juice for shipment to Montreal and

1. Any person who, knowingly or with intent to defraud, falsely makes, alters, forges, counterfeits, prints or photographs any bill of lading purporting to represent goods received for shipment among the several States or with foreign nations, or with like intent utters or publishes as true and genuine any such falsely altered, forged, counterfeited, falsely printed or photographed bill of lading, knowing it to be falsely altered, forged, counterfeited, falsely printed or photographed, or aids in making, altering, forging, counterfeiting, printing or photographing, or uttering or publishing the same, or issues or aids in issuing or procuring the issue of, or negotiates or transfers for value a bill which contains a false statement as to the receipt of the goods, or as to any other matter, or who, with intent to defraud, violates, or fails to comply with, or aids in any violation of, or failure to comply with any provision of this chapter, shall be guilty of a misdemeanor, and, upon conviction, shall be punished for each offense by imprisonment not exceeding five years, or by a fine not exceeding $5,000, or both.

2. Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both. 18 U.S.C.A. § 1341.

Toronto, Canada. The bills of lading, together with invoices and drafts, were negotiated with a St. Petersburg, Florida, bank and sums aggregating more than $22,000 were obtained from the bank. It subsequently developed that although the warehouse receipts and bills of lading called for 12,100 cases of citrus juices, the warehouses contained less than 1,700 cases. Bruce's Juices was bankrupt and the steamship line was required to protect the bank against loss. In the seventeen count case (district court No. 6601) fraudulently issued warehouse receipts were attached to drafts payable to the First National Bank of St. Petersburg, Florida, drawn on purchasers of the products described in the warehouse receipts. The drafts were handled by mail for collection. The appellant was sentenced to serve a year and a day on each count, with all sentences on both counts to run concurrently. Twelve specifications of error are assigned.

■ The court permitted the jury to take a copy of each of the indictments into the jury room. There was no objection to this being done and counsel at the trial for the appellant participated in a discussion with the court and Government counsel as to the effect of some underscoring which the court instructed the jury to ignore. On the appeal with the appellant being represented by other counsel, it is contended that error was committed in permitting the jury to have the indictment during its deliberations. In making the point, the appellant relies upon the decision of this court in Getchell v. United States, 5 Cir., 282 F.2d 681. The Getchell case is not a departure from the general rule that the trial court may, in the exercise of discretion, allow the indictment to be taken into the jury room. In the Getchell case, the trial court recognized the prejudicial character of the language in which the indictment was framed and declined to permit it to go to the jury. This Court recognized the propriety of its action. In this case, we find no prejudice to the appellant resulting from the allowing of the indictments to go with the jury, and no abuse of discretion in permitting it to be done.

■■ The indictments were returned early in 1956. The acts which the Government charged as criminal offenses took place in the summer of 1952. The cases were tried in June 1963. The appellant makes the contention that he has been denied his constitutional right to a speedy trial, that his witnesses have died and the memory of those who have lived has become dimmer and that he has been prejudiced by the delay. This, he says, is true notwithstanding that he took no action to require the case against him to be brought on for trial. The appellant contends that there was an unreasonable delay both in the interval between the commission of the offenses and the indictment, and the lapse of time between the indictment and the trial. The right to a speedy trial, guaranteed by the Sixth Amendment and implemented by Rule 48(b), Fed.Rules Crim.Proc. 18 U.S.C.A., does not arise until there has been an indictment or information, as the applicable statute of limitations is controlling as to the time within which an indictment or information must be brought. Harlow v. United States, 5th Cir. 1962, 301 F.2d 361, cert. den. 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56, reh. den. 371 U.S. 906, 83 S.Ct. 204, 9 L.Ed.2d 167. The appellant claims prejudice to his defense because of the dimmed memory of the witnesses after so great a lapse of time. That this is so may be doubted, as the memories of the witnesses for the prosecution may be no better than those of the defense. We have no difficulty in agreeing with the appellant that a seven year delay in bringing a case on for trial is unreasonable and unnecessary. But this does not, under the facts here present, require a reversal and a dismissal of the charges. The appellant could have asserted his right to a speedy trial by motion and perhaps by other procedural action. He did not do so. By not doing so he waived his right and cannot be heard to assert it after he has been tried and convicted. Harlow v. United States, supra.

■ In the mail fraud case, it is asserted by the appellant that his motion to acquit should have been granted because the use of the mails occurred subsequent to the execution of the scheme. The drafts were drawn and credit for them was given by the St. Petersburg bank and after the credit had been given the drafts were transmitted through the mails for presentation to the drawee. Attached to the drafts were warehouse receipts which purported to represent citrus juices in storage. The fraud, if any there was, says the appellant, had been perpetrated before there was any use of the mails and that the mails were thereafter used by the bank which was a stranger to the fraud. The using of the mails, says the appellant, was for the convenience of the bank and was not employed by or even contemplated by the appellant. But such is not the situation here. The drafts, with the spurious warehouse receipts, were turned over to the bank. The drafts were drawn on firms and corporations· in other places. The bank's function was to collect or attempt to collect the drafts. Collection items on distant points are frequently and perhaps usually forwarded by mail. The use of the mails should have been contemplated as a material part of the fraudulent scheme. The appellant's claim is without merit. Adams v. United States, 5th Cir. 1963, 312 F.2d 137.

■ Included in the evidence by which the Government sought to prove the first count of the mail fraud indictment were two warehouse receipts which had been mailed by the appellant to one of his associates. The appellant's contention is that these particular warehouse receipts were transmitted only for the purpose of showing the form of document that would be used as security but that these were mere samples and were not themselves intended to be pledged. The Government contends that the only reason that they were not used as collateral was because the banks to which they were offered would not accept them. The evidence was such that the Government's theory might have found acceptance with the jury, and

no error was committed in admitting these documents in evidence.

■ As a part of its case the Government undertook to reconstruct an inventory. In so doing it offered in evidence a carbon copy of a letter signed by J. L. Parker. The letter was addressed to an accounting firm for its use in an audit of Bruce's Juices then being made. The letter, Government's Exhibit 29, incorporated an inventory as of March 31, 1951, showing the Bruce's Juices products then on hand, including the goods in warehouse. Parker had been an employee of Bruce's Juices for a good many years, serving in an executive capacity. He was also, at the time the letter was written, a bonded agent of the warehouse company. The appellant, invoking the so called best evidence rule, contends that the instrument tendered is a copy, and hence secondary evidence, which should not have been admitted without justifying the non-production of the original. We cannot adopt this view. The writing was signed, as was the other copy of it, by the person who prepared it. This retained copy, as well as the copy sent, is a counterpart or duplicate and as such is not subject to exclusion under the rule. The retained copy, Exhibit 29, was properly received in evidence. 4 Wigmore on Evidence 442 et seq., §§ 1232–1234.

■ The Government called to the stand as its witness, Harry E. Hurst, a certified public accountant. This witness attempted to reconstruct an inventory of the products of Bruce's Juices as of the crucial date in 1952. He attempted to do so by using the information shown by Exhibit 29 as a starting point, adding the goods produced and deducting those shipped or delivered as shown by various documents in the records and files of the company. Hurst made a running inventory of each of the products and these were marked for identification as Government Exhibits 30, 30A to 30M inclusive. They were offered as evidence but never admitted. Hurst also prepared, and the Government offered in evidence, a summary or recapitulation from the number 30 exhibits of the re-

constructed inventory of all of the items. This summary was designated as Government's Exhibit 49. In discussing with counsel the question of admitting the summaries prepared by Hurst, the court stated the rule as being that "both as to his [Hurst] testimony and as to the summary which is being offered in evidence in the form of an exhibit [Exhibit 49], there must either be in evidence or available here in the court room the basis on which this witness drew his conclusion because it is up to the jury to arrive at a conclusion, if they so find that he arrived at the conclusion from the evidence."

The records and files of Bruce's Juices were very voluminous. Counsel for the Government offered to have the Marshal get a van and bring them in. The time arrived for the midday recess. Counsel for the appellant asked for some extra time so he could examine the Government's summaries and look up some law. Shortly after the noon recess, the court asked counsel for the appellant,

"Are you satisfied with your examination of those [Exhibits 30, 30A-30M] or do you require that additional records be brought in or what is your position?"

Counsel responded,

"Judge, I don't have a position in that matter. I made my objections and I don't care to add to them or make any argument on them. The burden is on the Government to make a proper showing."

Exhibit 49 was admitted in evidence and properly so. Counsel for the appellant may have well said that "the burden is on the Government to make a proper showing." But it might be as well said that a defendant may waive the making of such a showing. As this Court has said,

"The rule is that such a summary of books is admissible, provided cross-examination be allowed and the original records are available." Greenhill v. United States, 5th Cir. 1962, 298 F.2d 405, cert. den. 371 U.S. 830, 83 S.Ct. 25, 9 L.Ed.2d 67, cert. den. 372 U.S. 968, 83 S.Ct. 1092, 10 L.Ed.2d 130, reh. den. 373 U.S. 947, 83 S.Ct. 1536, 10 L.Ed.2d 703.

The Government offered to produce the records in court if required. The appellant, whose counsel declined to take a position when expressly asked whether it was required that the records be brought in, waived the right to require that the records be brought in. The records were available; the Government could have produced them; the appellant did not require it to be done. No error was committed in admitting the summary.

■ The appellant asserts that error was committed by the district court in denying his motion for a directed acquittal on the ground that the unlawful acts were committed by corporate agents acting outside their authority. The contention is that although the appellant was the president and most influential officer of Bruce's Juices, he would be subject to no criminal liability for the acts of other corporate agents unless the acts were committed by his command or with his consent. As announcing this principle, the appellant has cited the case of United States v. Food and Grocery Bureau of Southern California, D.C.S.D.Cal. 1942, 43 F.Supp. 966. Sound as may be the principles stated in this opinion, they are of no help to the appellant. There is ample evidence, which the jury apparently believed, to support the inference that the appellant was a participant in the fraudulent scheme for the procurement of warehouse receipts which did not represent goods in storage and the use of such warehouse receipts as instruments of credit. The motion to dismiss was properly denied.

By three separate specifications of error, the appellant urges that there was no competent evidence to establish the appellant's guilt in the conspiracy case. We do not think it would serve a useful purpose to outline this testimony. It is sufficient to say that the evidence was adequate to carry the case to the jury and the jury's verdict is fully supported

by the record. There are other assignments of error going to the admission of evidence and the giving of instructions. We do not find merit in any of these contentions and a discussion of them would not serve to illustrate any principle of law.

The appellant had a fair trial. The verdict was supported by the evidence. No error has been made to appear. The judgments and sentence of the district court in the consolidated causes are

Affirmed.