**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alex J. JUDICE and W. R. Merritt, Sr.,
Defendants-Appellants.**

**No. 71–2526
Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

Feb. 16, 1972.

Rehearing and Rehearing En Banc
Denied March 23, 1972.

Albert S. Johnston, III, Alfred Lee Felder, Johnston & Felder, Pascagoula, Miss., for defendants-appellants.

Robert E. Hauberg, U. S. Atty., E. Donald Strange, Asst. U. S. Atty., Jackson, Miss., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

\* ▮ Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir. 1970, 431 F.2d 409, Part I.

SIMPSON, Circuit Judge:

On this appeal from judgments of conviction and sentence imposed following jury verdicts of guilty returned in their joint trial for violations of Title 26, U. S.C., Section 5861, receiving or possessing a firearm (as defined in the Act) not registered to him in The National Firearms Registration Record (under Sec. 5861(d), Count I) and transferring a firearm (as defined in the Act) in violation of the Act without having paid a transfer tax as provided for in Title 26, U.S.C., Section 5811 (under Sec. 5861(e), Count II), the Messrs. Judice and Merritt urge two grounds of claimed error on the part of the trial court. We conclude that error is not demonstrated in either particular and accordingly affirm.

The first contention is that their Sixth Amendment right to a speedy trial and their due process and equal protection rights under the Fifth and Fourteenth Amendments were infringed by the time lag of twenty-one months between the date of the alleged offenses and the date they were brought to trial, relying upon Ross v. United States, 1965, 121 U.S.App.D.C. 233, 349 F.2d 210. This contention is specious. This Circuit has repeatedly rejected the Ross rationale in holding that delay between the dates of the offense and indictment is controlled exclusively by the applicable Statute of Limitations.[1] The correctness of our view has recently been vindicated by the December 20, 1971 decision of the Supreme Court in United States v. Marion, et al., 404 U.S. 307, 92 S.Ct. 455, 30 L. Ed.2d 468 (decided December 20, 1971). *Kroll, Grayson, Harlow* and *Bruce,* with several other Fifth Circuit cases, and numerous cases from other Circuits, are cited by the Supreme Court in its Footnote 8 to its statement in *Marion*[2] that "the Courts of Appeal that have considered the question in constitutional terms have never reversed a conviction or dismissed an indictment solely on the basis of the Sixth Amendment's speedy trial provision where only pre-indictment delay was involved."

The remaining contention advanced by Judice and Merritt is that they were entrapped, as a matter of law, by agents of the Internal Revenue Service into commission of the offenses charged, and were hence entitled to direction of a judgment of acquittal, for which they timely moved. We find this point equally without substance, for reasons we now briefly set forth.

The government's evidence was that after being furnished information as to automatic weapons at Paps Furniture, Reloading and Supply Store at Biloxi, Mississippi, operated by Arthur Parker,

---

1. Kroll v. United States, 5 Cir. 1970, 433 F.2d 1282, cert. den. 402 U.S. 944, 91 S.Ct. 1618, 29 L.Ed.2d 112 (1971); United States v. Grayson, 5 Cir. 1969, 416 F.2d 1073, cert. den. 396 U.S. 1059, 90 S.Ct. 754, 24 L.Ed.2d 753, reh. den. 397 U.S. 1003, 90 S.Ct. 1114, 25 L.Ed.2d 415; lv. to file 2nd pet. for reh. den. 399 U.S. 917, 90 S.Ct. 2191, 26 L.Ed.2d 576 (1970); McConnell v. United States, 5 Cir. 1968, 402 F.2d 852, cert. den. 1969, 394 U.S. 933, 89 S.Ct. 1208, 22 L.Ed.2d 464; Bruce v. United States, 5 Cir. 1965, 351 F.2d 318, cert. den. 1966, 384 U.S. 921, 86 S.Ct. 1370, 16 L.Ed.2d 441; Harlow v. United States, 5 Cir. 1962, 301 F. 2d 361.

Not raised here, but also dealt with in *Bruce, Kroll* and *Grayson,* in addition to the constitutional argument under the Fifth and Sixth Amendments, were claims that delay between date of offense and date of indictment is interdicted by Rule 48(b)'s, (F.R.Crim.P.), provision as to unnecessary delay in presenting the charge to a grand jury. We held in both *Kroll* and *Grayson,* citing *Bruce,* that the Rule 48(b) provision is likewise governed by the applicable Statute of Limitations, that is that timely indictment under the limitation statute is not "unnecessary delay" under Rule 48(b). The Supreme Court in *Marion* text infra, did not decide Criminal Rule 48(b)'s applicability, but noted in its Footnote 4. (404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468) that "In any event, it is doubtful that Rule 48(b) applies in the circumstances of this case, where the indictment was the first formal act in the criminal prosecution of these appellees."

2. 92 S.Ct. page 459.

Revenue Agent Owens went to that establishment in an undercover capacity and was successful without any inducements to Parker in purchasing an automatic carbine from Parker.[3] This sale took place April 15, 1969. Agent Holt who was stationed at Meridian, Mississippi, was called down to Biloxi to work undercover with Owens and they discussed the case on the night of April 15. On the following day, April 16, the two agents went to Parker's store where Agent Holt met Parker. After a discussion of automatic guns Holt gave Parker a list of the type guns he was interested in purchasing. The appellant Judice was present in the store and was introduced to Holt. In an ensuing conversation about automatic weapons Judice asked "whether he would be interested in a 9-mm. German Schmeisser."[4] Judice told Holt that he could procure the type weapons Holt had listed and an appointment was made for Holt and Judice to meet at the gunshop about 5 P.M. on April 17.

When Holt returned the afternoon of the 17th Parker was in the store but Judice was not. After Holt had waited fifteen or twenty minutes Parker called him to the telephone where he discussed guns with a person later identified by him as the appellant Merritt. After first offering Merritt $125.00 for an automatic carbine for which Merritt's asking price was $260.00, Holt agreed to pay Merritt $250.00 for the weapon provided Merritt was able to supply other automatic weapons in good condition. They agreed to meet about 8 P.M., which they did along with Parker and Judice. Merritt delivered the automatic carbine and prices for other illegal weapons were discussed and an agreement reached as to price. Holt later called Merritt at a telephone number furnished by Merritt and agreements were reached as to the price and meeting place where the additional weapons would be delivered to Holt and the money paid. Under this agreement Holt and Owens met the appellants Judice and Merritt about 1 A.M., April 18, in a desolate area about four miles east of Pascagoula, Mississippi, where the exchange took place.

Judice's testimony was to the effect that he was introduced to Holt at Parker's shop and was told that Holt was looking for automatic weapons for an invasion of Cuba and that a premium price would be paid for such weapons. Judice denied discussing automatic weapons with Holt at this time and testified that he did not own any or know where any could be located. He testified that he went back to Pascagoula to Merritt's home and during a casual conversation Merritt remarked that a Mr. Paul Woods had discussed some automatic guns with him. Merritt then called Woods, found that he had such guns, and phoned Parker to arrange for a meeting on the following day. Judice admitted that he and Merritt carried an automatic carbine to this meeting and that this was at a time prior to the acquisition of the other weapons from Woods. Judice's testimony as to the transfer of the guns at 1 A.M. on April 18 did not differ materially from the testimony of Holt and Owens. He further testified that he and Merritt received $500.00 each as their part of the bargain. He testified that at this meeting he was wearing gloves and had a shotgun.

Merritt's testimony was similar in material respects to that of Judice as to the meeting at Merritt's home, the discussion about machine guns and the call about guns to Mr. Woods and the ensuing call to Parker's gunshop setting up the meeting with Holt. He further testified that he took the automatic carbine to Parker's where he first met Holt and that he was armed with a pistol during that discussion. He admitted the transfer of the firearm, that he knew the transaction was illegal, and that he had

---

3. This transaction was the basis of a separate prosecution of Parker.

4. This weapon was introduced in the trial below as Government's Exhibit 2.

committed a crime. In his testimony Merritt related no acts or declarations of either government agent susceptible of being construed as an unlawful inducement to sell the firearms.

The motion for directed verdict on the basis of entrapment was made after both sides rested, the court holding that the defense of entrapment should be submitted to the jury. The sufficiency of the instructions on this point was not excepted to by either appellant and no request for additional instructions was made. The appellants' sole contention is that under the facts of the case the trial court should, as a matter of law, have ruled that the appellants were entrapped and entered a judgment of acquittal on their behalf.

In this connection, the appellants rely primarily on Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848. That case held that Sherman was entrapped by the use of an informer and that the government cannot disassociate itself from his acts. In *Sherman,* however, there was repeated persuasion, including an appeal to sympathy and an inducement offered to the defendant himself to return to the use of narcotics on an habitual basis. *Sherman* thus is clearly distinguishable from the case at bar since Holt's offer was couched strictly in business terms and was made only once. The agents testified that they offered no inducements and that the prices they paid were reasonable in the underworld firearms business. It would appear that the jury was justified in deciding that the appellants simply were afforded the opportunity to violate the law, which they did, and that no entrapment by the government's agents took place. We hold that under the facts of this case the defense of entrapment was a proper matter for submission to the jury and that since the defense was submitted to the jury in unassailed language error is not made to appear.

The judgments appealed from are affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

Our attention is called by the Petition for Rehearing to the following language appearing in the text of United States v. Marion, et al., 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) appearing at page 465 of 92 S.Ct.:

"Since appellees rely only on potential prejudice and the passage of time between the alleged crime and the indictment, see Part IV, infra, we perhaps need go no further to dispose of this case, for the indictment was the first official act designating appellees as accused individuals and that event occurred within the statute of limitations. Nevertheless, since a criminal trial is the likely consequence of our judgment and since appellees may claim actual prejudice to their defense, it is appropriate to note here that the statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment. Thus the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was a purposeful device to gain tactical advantage over the accused. *Cf.* Brady v. Maryland, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963); Napue v. Illinois, 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed.2d 1217] (1959). However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution. Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the

sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case. It would be unwise at this juncture to attempt to forecast our decision in such cases."

■ We view this as simply a caveat by the Court to the effect that a case may be presented in which substantial prejudice to a fair trial may be shown to have occurred because of pre-indictment delay. Other than vague generalities asserting that their defense was prejudiced because of delay, the appellees have made no showing of delay-induced prejudice in this case. The showing is characterized in the petition for rehearing as follows:

"The brief of the Petitioners pointed out the loss of witnesses,[1] the loss of evidence and particularly the blurring of the memories of the Petitioners and their witnesses. The brief contrasted the sharp, crisp testimony of the government agents, trained agents who were able to note during their investigation those important elements necessary for securing a conviction. Appellants had no knowledge that they were delaying the government agents or that they would be formally accused until the indictments were returned against them twenty-one months later. The State was able to proceed methodically to build this case while the Petitioners proceeded to lose theirs."

It seems to us that the same or similar allegations might well be urged in any criminal case in which the indictment occurs twenty-one months after the events upon which it is based. But all practiced trial lawyers are well aware that the attrition from such delay is more damaging to the prosecution's case than to that of the defense. This will be so as long as the prosecution has the burden of proof. In sum, while we recognize that the hypothetical case forecast by the above quotation from *Marion*

may arise some day, we do not believe that this is such a case.

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35, F.R.A.P.; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

---

1. As we read the appellants' brief this is limited to the disappearance of a single person who might have furnished evidence for the defense.