**UNITED STATES of America,**
v.
**Plaintiff-Appellee,**
**Harry LANE, Defendant-Appellant.**
No. 71–1996
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.
July 24, 1972.

---

Clay C. Scott, Jr., Harold G. Adams, Dallas, Tex., for defendant-appellant.

Eldon B. Mahon, U. S. Atty., Charles D. Cabaniss, Frank D. McCown, Andrew Barr, Asst. U. S. Attys., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The appellant Harry Lane was charged, along with thirty-five other defendants, in a thirty-six count mail fraud and conspiracy [1] indictment, returned by a Dallas, Texas grand jury June 26, 1968. From his conviction and sentence as to five counts of the indictment he takes this appeal, claiming (1) violation of his Sixth Amendment right to a speedy trial, and (2) prejudicial joinder with other defendants in the trial. We view the appeal as without merit and affirm.

It may be noted that the insufficiency of the evidence is not one of the grounds for reversal asserted on appeal. Nevertheless to provide a setting for our discussion of both of the claimed grounds of error it is necessary to set forth the nature of the charges, some of the evidence and considerable procedural history. Appreciation of the complexity of the charges and the numerous procedural steps involved in this prosecution will aid by providing a backdrop for the delineation of our reasons for rejecting the appeal.

The offenses were alleged to have taken place between February 15, 1966 and May 31, 1967. The mail fraud schemes involved generally making spurious claims against Aetna Casualty and Surety Company, a casualty insurer, (Aetna), for damages resulting from automobile collisions, thefts of household and other personal property and vandalism to dwellings. Most claims were wholly false, that is, there had been no accident, theft or act of vandalism, but in a few instances they were based on actual occurrences with the amount of loss

1. Counts 1 through 35 charged violations of the mail fraud statute, Title 18, U.S.C., Section 1341. Count 36 charged a conspiracy under Title 18, U.S.C., Section 371, to violate Section 1341.

fraudulently inflated. William Leslie Black was the supervisor of small claims for Aetna's Dallas office. He directed the fraudulent activity, "investigated" the claims, and issued Aetna drafts in payment for the damage claims. Black was one of the indicted defendants but died prior to trial. Another central figure to the scheme was Fred J. Grosenbacher, Jr. He recruited participants, distributed proceeds, and saw to numerous details. He was employed as an auto glass salesman for the Dallas branch of a national concern but devoted considerable time to executing the scheme. This defendant plead guilty and was the primary prosecution witness at the trial.

The scheme's operation required a "banker" through whom claim payment drafts and other checks could be converted into cash for distribution among the participants. A source of ready cash was necessary since the Aetna claims were paid off by drafts on Boston funds, not by Dallas bank checks, and proceeds could only be collected after delay for a number of days. Collection delays raised several problems for Black and Grosenbacher. Most participants wanted immediate payment without being required to wait for collection. Also Black and Grosenbacher did not trust some of the claimants, being fearful that if the payment drafts were delivered to them they might refuse to kick-back part of the proceeds. Many of the drafts were payable to fictitious names and could not be safely introduced into banking channels for routine collection. A business man with established banking connections was needed who could provide cash in exchange for the drafts and thereupon obtain immediate credit from his bank upon deposit of a draft. The defendant Harry Lane owned a neighborhood furniture store and had an established banking connection with a bank only a city block from his store. He filled the need for a "banker". A customary procedure, according to the evidence, was for Black or Grosenbacher to obtain the endorsement of the claimant on a draft and take it to Lane at his store. Lane would walk to the bank, cash the draft and return with the proceeds in currency. He would deduct $100 (sometimes more) for his services and deliver the balance to Black or Grosenbacher to distribute. Lane also cashed kick-back checks from claimants for Black and Grosenbacher. Often these personal checks would be issued with the payee's name left blank so that Lane could enter the name "Lane Furniture Store" as the payee. The check would then go through his bank account as though the claimant had purchased furniture. The usual charge for cashing these kick-back checks was also $100. The evidence showed that during the course of the conspiracy Lane cashed 56 such drafts and checks with a total face value of $91,144.45.

Prior to trial 30 of the 36 defendants entered guilty pleas, and as noted Black had died. Lane went to trial with the four other defendants on February 1, 1971 with the trial lasting seven weeks until the return of the verdict on March 18, 1971. The trial transcript runs to eleven volumes, totaling about 3600 pages. 152 exhibits were introduced in evidence by the government and 95 by the defendants. More than 80 witnesses were sworn. The government called 32 witnesses, the defendant Lane six and the other four defendants 42. All of the defendants on trial testified. Lane's testimony in his own behalf consisted mainly of a denial of wrongdoing and an effort to accommodate and explain away the incriminating circumstances.

The trial of the 5 defendants was with respect to 10 counts of the indictment, mail fraud counts 10, 11, 12, 17, 22, 23, 24, 34 and 35, and the conspiracy count 36. The appellant was named a defendant and tried on each of these 10 counts. The other defendants on trial were each named as a defendant in 3 or more counts but none of them was a defendant under all of the 10 counts being tried. Two of the defendants on trial were acquitted of all

charges. Two others were convicted under Count 36, the conspiracy count. One of these defendants was also convicted of two mail fraud offenses and the other of a single mail fraud offense.

The Appellant Lane was convicted under Counts 12, 17, 34, 35 and 36, and acquitted on Counts 10, 11, 22 and 23.[2]

The appellant was sentenced to three years confinement on each of the counts on which he was convicted, with the sentences directed to run concurrently with each other. Other deeply involved defendants also received confinement sentences, while defendants who played lesser roles were given probated sentences upon condition that they make restitution. Of the thirty-three defendants convicted on plea and trial Lane is the sole defendant to enter an appeal.

By this appeal he launches two attacks upon his conviction: (1) whether he was deprived of his Sixth Amendment right to a speedy trial, and (2) whether he was prejudiced by the trial court's denial of his Motion Against Prejudicial Joinder under Rule 14, F. R.Crim.P. We find merit in neither contention.

The claim as to denial of a speedy trial involves two periods: (a) the delay between August 18, 1967, when the appellant asserts that the conduct of the defendants came to the attention of the United States Attorney, and June 27, 1968, when the indictment was returned, and (b) the period from June 1968 to February 1, 1971, between indictment and Lane's actual trial.

■ The recitation of the involved and complicated nature of the scheme, the numerous participants and the necessary assembly and classification of the documentary evidence involved in-

dicates that the prosecution moved with commendable speed to procure the indictment in this case. The applicable statute of limitations, Title 18, U.S.C., Section 3282, required that the indictment be returned within five years of the date of the offenses charged. This would have permitted indictment as to the mail fraud counts within five years of several dates between February 15, 1966 and May 31, 1967. The limitation period for the conspiracy would have expired May 31, 1972, five years after the date of the alleged expiration of the conspiracy. See Kroll v. United States, 5 Cir. 1971, 433 F.2d 1282, 1286; United States v. Judice, et al., 5 Cir. 1972, 457 F.2d 414 [decided February 16, 1972].

■ With respect to the second period of claimed prejudicial delay involved—the lapse of about thirty-one months from the date of indictment to the date of trial—we note that the defendant never moved for a trial date, although in January and February 1971 he did move to dismiss the indictment for failure to accord him a speedy trial. There were 25 assorted motions filed by defendants[3] during this period which required preparation of responses and appearances at hearings by government counsel. It was necessary for government counsel to prepare sentence data for the sentencing of the 30 defendants who entered guilty pleas. Finally it was necessary for government counsel to marshal the testimony of 32 government witnesses, plan the introduction of 152 exhibits, prepare the cross-examination of 48 defense witnesses, arrange a trial date when the presence of the numerous witnesses could be obtained, and when a judge would be available.

■ The primary prejudice to his defense due to delay claimed by the de-

---

2. Lane's convictions under Counts 12, 34 and 35 were based on services he was charged with performing as a "banker". His Count 17 conviction was based on a fraudulent claim for theft of personal property from his home. By oversight Count 24 was not listed on the verdict form and there was no verdict on that count.

3. These included motions for extensions of time within which to move to dismiss the indictment, motion for inspection of grand jury minutes and for inspection of the transcript of grand jury proceedings, to dismiss the indictment, both on the merits and because of delay in trial, motions for bills of particulars and motions against prejudicial joinder.

fendant is the intervening death of William Leslie Black, whom he asserts would have been able to testify in his behalf. It must be recalled in this connection that Black was the master-mind of the scheme. He was named as a defendant in all 36 counts of the indictment. Black of course could not have been compelled by the defendant to testify if he asserted his Fifth Amendment privilege, as well he might. The appellant although suggesting that Black was friendly to him does not and apparently· cannot assert an agreement by Black to testify in his behalf. About six months of the delay in trial was consumed by Black's psychiatric examination and evaluation at the Medical Center for Federal Prisoners, Springfield, Missouri, to determine his competency to stand trial. During that examination Black (as revealed by the medical report in this record) claimed that he could not remember any of the events which occurred during the period of the conspiracy charged in this case. Thus, it appears likely that had Black lived his trial testimony would have been to this effect and he would not have given any testimony favorable to the appellant Lane. Lane also claims prejudice because of the death of Black's attorney, T. K. Irwin. It would appear that any knowledge Irwin had was hearsay, consisting largely of matters learned in confidence from his client Black. Further since Black and Irwin were the persons who first exposed this complicated scheme to defraud to Aetna officials and to law enforcement agencies there seems small likelihood that either would have been of any assistance to Lane in his defense. Lane also asserts that the delay prevented his locating a proposed witness, one James Leroy McKnight, but fails to indicate by affidavit, signed statement or otherwise the purport of McKnight's testimony or any reason why it was important to his defense.

■ Lastly, in attempting to demonstrate that memories of witnesses had faded during the time the indictment was pending, the appellant undertakes on brief to cite examples. None of these instances are significant, and all refer to the testimony of his co-defendant, the government witness Grosenbacher. Grosenbacher's testimony extended over four days and takes up 665 pages of the transcript. He referred to numerous exhibits in the course of this lengthy testimony. The matters attacked by Lane are several instances where Grosenbacher indicated he would have to re-examine an exhibit to refresh his memory so as to provide specific factual answers respecting the precise amount of a check, the date of a transaction, or the like.

We re-examined United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, as well as several decisions of this Court both prior to and since *Marion*[4] in an attempt to determine

4. United States v. Edwards, 5 Cir. 1972, 458 F.2d 875 [decided April 17, 1972]; United States v. Judice and Merritt, 5 Cir. 1972, 457 F.2d 414 [decided February 16, 1972]; United States v. Rosson, 5 Cir. 1971, 441 F.2d 242, 245, 249; United States v. Grimes, 5 Cir. 1970, 426 F.2d 706, 708; Yoo Kun Wha v. Sheriff of Fulton County, 5 Cir. 1970, 436 F.2d 966, 967; United States v. Durham, 5 Cir. 1969, 413 F.2d 1003, 1004; Bradford v. United States, 5 Cir. 1969, 413 F.2d 467, 469–470; United States v. Auerbach, 5 Cir. 1969, 420 F.2d 921, 924; Bruce v. United States, 5 Cir. 1965, 351 F.2d 318; Harlow v. United States, 5 Cir. 1962, 301 F.2d 361. See further United States v. Ewell, 1966, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627; Dickey v. Florida, 1970, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (holding that "an accused cannot sustain a speedy-trial claim when delay results from his . . . making dilatory pleadings or motions, failing to object when a continuance is granted the government, . . ."); United States v. Kabot, 2 Cir. 1961, 295 F.2d 848, at page 852, cert. denied 1962, 369 U.S. 803, 82 S.Ct. 641, 7 L.Ed.2d 550 (holding that "delay caused by or consented to by a defendant is not unreasonable."); Sawyer v. Barczak, 7 Cir. 1956, 229 F.2d 805, 812, cert. denied 1956, 351 U.S. 966, 76 S.Ct. 1025, 100 L.Ed. 1486 (holding that "delay is waived when the defendant fails to object when a continu-

whether or not Lane has demonstrated a violation of Sixth Amendment rights. We had determined that prejudice to these rights was not demonstrated by the criteria enunciated in any of these cases when the Supreme Court on June 22, 1972, announced another important decision in the Sixth Amendment speedy trial field. See Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 [decided June 22, 1972]. Mr. Justice Powell for the Court in that case announced the four most important factors ordinarily to be considered in approaching "speedy-trial cases on an *ad hoc* basis" in the following language:

> "We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192.

Careful re-examination of the matters relied on by the appellant in the light of Barker v. Wingo fails to change our view that no violation of Sixth Amendment speedy trial rights is demonstrated in the case under appeal.

As to *prejudicial joinder* of the appellant in the indictment with the other four defendants on trial, and the refusal of the trial judge to grant Lane a separate trial, we are not convinced that reversible error occurred below. The right to join the several defendants in a single indictment and to try them in a single joint trial, is granted by Rule 8, F.R.Crim.P. Under Rule 8, the offenses may be joined if they are "of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan", (Rule 8(a)), and joint trial may be ordered when the defendants are "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.", (Rule 8(b)).

■■ Motions for relief from prejudicial joinder under Rule 14, F.R.Crim. P., are addressed to the sound discretion of the trial court. The burden of an affirmative showing of an abuse of discretion has not been sustained by this appellant. This is his heavy burden under our decided cases. Dowling v. United States, 5 Cir. 1957, 249 F.2d 746, 747, 752. See further United States v. Blanchette, 5 Cir. 1972, 453 F.2d 859, 860; United States v. Hansbrough, 5 Cir. 1971, 450 F.2d 328; Smith v. United States, 5 Cir. 1967, 385 F.2d 34; Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101.

This Court has given comprehensive consideration to the issue of severance for relief from prejudicial joinder in numerous cases including United States v. Bullock, 5 Cir. 1971, 451 F.2d 884, 889; James v. United States, 5 Cir. 1969, 416 F.2d 467; Tillman v. United States, 5 Cir. 1969, 406 F.2d 930, cert. denied 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742; Peterson v. United States, 5 Cir. 1965, 344 F.2d 419.

We think the contentions of the appellant in this regard are fully met and answered by the following quotation from our opinion in *Tillman,* supra:

> "The appellants allege that the trial court erred in failing to grant their motions for severance, both as to the joinder of offenses and as to the joinder of defendants. In regard to any allegation of misjoinder of offenses, the relevant rule is Rule 8(a) of the Federal Rules of Criminal Procedure. . . . This rule should not be ininterpreted in a technical or legalistic sense . . . [citations omitted] Where, as here, the offenses arose out of a series of connected acts, trial convenience dictates 'that the govern-

---

ance is granted".) ; Collins v. United States, 9 Cir. 1946, 157 F.2d 409 (holding

that "delay is waived when the defendant makes dilatory pleadings and motions.").

ment should not be made to prove the same facts more than once.' [citations omitted]

"Similarly, there was no misjoinder of defendants. Rule 8(b) of the Federal Rules of Criminal Procedure . . . In conjunction with Rule 8 (a) joinder of offenses, Rule 8(b) has the effect of permitting joinder of defendants where their alleged violations of law have arisen out of the same act or series of acts . . . [citations omitted]

"Having found that there was no misjoinder of offenses or defendants under Rule 8, it is still necessary to determine whether there was sufficient prejudice to require a severance under Rule 14 of the Federal Rules of Criminal Procedure . . . [citations omitted] The existence of prejudice, in large measure, depends upon the facts and circumstances of each case . . . [citations omitted] and it is axiomatic that the granting of a severance is within the discretion of the trial judge . . . [citations omitted] The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review . . . [citations omitted] The defendant must show something more than the fact that 'a separate trial might offer him a better chance of acquittal'. . . . [citations omitted]

"Appellants alleged that they were prejudiced and their trial rendered unfair because the jury was unable to collate the evidence and connect the names and faces of each defendant with the independent evidence being offered against him. In essence, it is alleged that the convictions rested upon an unlawful cumulation of evidence, and that had there been separate trials, the appellants would not have been convicted. . . . [citations omitted] Weighing this possi-

bility of prejudice 'against the interests of economy and expedition in judicial administration', we do not find an abuse of discretion in the denial of a severance . . . [citations omitted]." 406 F.2d at 933, 934, 935.

The judgment and sentence appealed from are

Affirmed.