309 So.2d 172 (1975)
Charles CAMPBELL
v.
STATE of Mississippi.
No. 48290.
Supreme Court of Mississippi.
March 10, 1975.
*173 Frank Pilgrim, Laurel, for appellant.
A.F. Summer, Atty. Gen. by John C. Ellis, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, ROBERTSON and WALKER, JJ.
ROBERTSON, Justice, for the Court:
Charles Campbell was indicted, tried and convicted in the Circuit Court of the Second Judicial District of Jones County, of the illegal sale of 2.3 grams of marijuana to Henry Thompson, an undercover agent for the Mississippi Bureau of Narcotics. He was sentenced to serve a term of ten years in the Mississippi State Penitentiary.
As a special undercover agent for the Mississippi Bureau of Narcotics, Thompson, in December, 1972, was assigned to the Laurel area. It was his main duty and responsibility to investigate the illegal drug traffic in Laurel. To effectively do this, it was very necessary that he work his way into the confidence of the people dealing in drugs. Thompson met Campbell in December, 1972, soon after Thompson arrived on the scene. He saw Campbell frequently and Campbell began to talk about the illegal drug traffic in Laurel.
On January 11, 1973, Campbell and Thompson talked about purchasing a quantity of marijuana, how they would finance it, and where they would pick it up. On January 12, 1973, Thompson picked up Campbell with the purpose and intent of making a quantity purchase. They first went to the home of one of Campbell's friends to set up the purchase, but that friend was not at home. They went to a second friend's house to arrange the financing. They then returned to the first friend's house and Campbell went in to talk with his friend while Thompson waited in the car. Campbell reported to Thompson that his friend was expecting a visitor from Jackson and "he would not be able to take us to purchase the marijuana at that time." After unsuccessfully seeking another supplier, Campbell asked Thompson if he would like to "score some dope for our own personal use."
They drove to a house on Joe Wheeler Avenue where Campbell got out and went in, while Thompson waited in the car. Shortly thereafter Campbell returned to *174 the car with a $10.00 bag of marijuana, and asked Thompson if he would like to purchase $5.00 worth. Thompson replied that he would, paid the appellant $5.00 and had the appellant pour half of the marijuana into a brown manila envelope. Thompson personally took this envelope to the Mississippi Crime Lab in Jackson on January 16, 1973. It was analyzed and tested and proved to be marijuana.
Appellant was not indicted by the Jones County Grand Jury until March 19, 1974, fourteen months later.
Appellant contends that:
"The lower court erred by failing to dismiss the charges lodged against appellant for prosecution's 14 months preindictment delay and thus deprived appellant of due process rights to a fair trial."
Thompson testified that there was a scarcity of Black undercover agents, and that if he had arrested Campbell at the time of the sale, his cover would have been blown and the main purpose of his work in Laurel, which was to get the big pushers, would have been defeated.
This Court discussed pre-indictment and pre-trial delays in Page v. State, 295 So.2d 279 (Miss. 1974). As in the case at bar, Page was convicted of selling marijuana. In Page, we again discussed the 4-way balancing test outlined in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which test was first used by this Court in Wells v. State, 288 So.2d 860 (Miss. 1974). In Page, we said:
"We now apply the four factors set out in Barker, supra, and Wells, supra. First, the length of the delay was slightly over a year from the time of the indictment until trial date. Second, the reason for the delay, as testified to by representatives of the state, was the inability of the state to locate the appellant. Third, as to the appellant's assertion pertaining to his right for a speedy trial, he voluntarily turned himself in to the sheriff in December 1972, less than five months prior to his trial, and failed to demand a speedy trial. As to the fourth factor, he argues that he was prejudiced by a loss of witnesses who could have testified in his favor, but the record does not substantiate that claim. Therefore, application of the balancing test of Barker, supra, to the circumstances shown by the record before us leads us to the conclusion that the appellant was not denied due process because of pre-indictment and pre-trial delays." 295 So.2d at page 281.
According to appellant's own testimony, he was out of the state of Mississippi and in Cleveland, Ohio, for the calendar year 1973, except for two one-week visits to the State. We can also state, as was said in Page, that the record does not substantiate the claim that the appellant was prejudiced by the pre-indictment delay. In addition, Mississippi Code Annotated section 99-1-7 (1972), which is the State's general two-year statute of limitations, applies and sets limits on stale prosecutions.
In United States v. Judice, 457 F.2d 414 (5th Cir.1972), the Court said:
"This Circuit has repeatedly rejected the Ross rationale in holding that delay between the dates of the offense and indictment is controlled exclusively by the applicable Statute of Limitations. [Extensive citations in Footnote] The correctness of our view has recently been indicated by the December 20, 1971 decision of the Supreme Court in United States v. Marion, et al., 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (decided December 20, 1971)." 457 F.2d at 415 (Emphasis added).
In Page, we also said:
"A simple delay between the date of an offense and the date of an indictment is not per se reversible error especially where (as in this case) the delay is to conceal the identity of an undercover agent for a reasonable period of time so that he may continue to effectively work *175 as such an agent. United States v. Judice, 457 F.2d 414 (5th Cir.1972)." 295 So.2d at 280.
For the reasons set forth in Judice, Wells and Page, we are of the opinion that the trial court was correct in refusing to dismiss the charge against Campbell due to the 14-month pre-indictment delay.
At the trial, the appellant's defense was an alibi. He testified that he left Laurel on January 3rd or 4th, 1973, by bus, to go to Cleveland, Ohio, to look for a job, and that he did not return to Mississippi for a one-week visit until February 17, 1973.
Juanita Blanks, the appellant's Mississippi girl friend, and John E. Campbell, appellant's father, testified that they were with the appellant at the bus station in Laurel on January 3rd or 4th, 1973, when he departed for Cleveland, Ohio. Both stated that to their best knowledge the appellant was not in Jones County on January 12, 1973.
Although the appellant testified that he was staying with a friend in Cleveland, Ohio, on January 12, 1973, this friend was not produced at the trial, nor was any explanation made for this friend's absence, and so it was up to the jury as to which witness they would believe, Thompson, the undercover agent, or Campbell, the appellant.
Appellant next contends that the trial court erred in overruling his motion to quash the jury panel. This alleged error was based on the fact that, as the jury in the case of State v. Keys left the courtroom and as the last juror was going down the stairs, a Black woman in the balcony shouted "Every one of you are going to live to see the day that you will regret this verdict that was returned today, just see if you don't." Keys also was a marijuana case, and the jury had just returned a verdict of guilty.
Mayo, the juror who informed the judge of this incident, also testified that one of the other men on the jury said that the Black woman tried to spit on them. Mayo stated that no profanity was used and the threatening remark did not scare him. Mayo was not sure that any, who were not on the Keys jury, heard the threatening remark.
In denying the appellant's motion to quash the jury panel, the court said:
"On the regular jury panel for this week there are thirty-four jurors, one of whom has been excused by the Court because of a hardship, and that leaves thirty-three. Twelve jurors heard the case of State of Mississippi vs. Robert Keyes, which was concluded before the noon hour, and at approximately twelve, oh-five, resulted in the jury announcing to the Court a verdict of guilty in that case, and the Court has already, even prior to this evidentiary hearing, determined that those twelve jurors should not be tendered for voir dire examination in the present case, and have caused them to be retired from the juryroom and to be separately roomed in another portion of the courthouse, pending this motion.
"The Court will at this time finally discharge those jurors and the Bailiff may at this time go tell them that they have been excused until nine o'clock in the morning, to be back at that time.
"The evidence is not such in this hearing at this time to lead the Court to believe that the other remaining jurors have been unduly influenced by the events which are related in the testimony on the hearing of this motion. However, if on voir dire examination it does appear to the Court that they have been influenced by the events that transpired this morning the Court will not hesitate at that time to discharge those jurors and continue this case for hearing at a later date for trial in the term."
*176 We do not think that the trial court abused its discretion in overruling the appellant's motion to quash. The trial judge was on the scene and personally observed and examined the jury panel on voir dire. He heard the prosecution and defense question the prospective jurors, heard their answers, and personally observed the actions and reactions of the jurors. This was a matter peculiarly within the province of the trial judge to rule on in his sound judgment and discretion.
The record also is silent as to whether appellant used all of his peremptory challenges. Nowhere in the record does the appellant express any dissatisfaction with the jury as finally accepted. The trial court was correct in overruling the motion to quash.
We find no merit in the other four assignments of error. The conviction and sentence are, therefore, affirmed.
Affirmed.
GILLESPIE, C.J., RODGERS, P.J., and INZER, SMITH, SUGG and BROOM, JJ., concur.