519 So.2d 886 (1988)
Curley DEDEAUX
v.
STATE of Mississippi.
No. 57479.
Supreme Court of Mississippi.
February 3, 1988.
*887 Thomas D. Berry, Jr., Gulfport, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:
Curley Dedeaux was convicted of the sale of a controlled substance by the Circuit Court of Harrison County and sentenced to thirty (30) years imprisonment, with said sentence to run consecutive with a prior sentence of fifteen (15) years for a total of forty-five (45) years to serve. Dedeaux appeals this adverse verdict and sentence making five (5) assignments of error.

FACTS
On December 12, 1984, Roy Sanderfer, an agent with the Mississippi Bureau of Narcotics, was acting in an undercover capacity. On the above date, in a pre-arranged meeting, Agent Sanderfer purchased cocaine from Curley Dedeaux, a black man, for $300.00. The transaction took place in Pass Christian. Another agent was strategically placed so as to observe the transaction.
Not until September 19, 1985 was Dedeaux formally charged with selling cocaine by the Harrison County Grand Jury. There was no arrest or preliminary hearing carried out prior to the rendition of the indictment against appellant. This was done due to the fact that there was an ongoing undercover drug operation being conducted on the Mississippi Gulf Coast that would have been "blown" if Dedeaux had been arrested or charged at an earlier date. Following the indictment, Dedeaux was arrested on October 4, 1985.
In the trial below, conducted February 24-25, 1986, two (2) law enforcement officers testified that Dedeaux had sold the cocaine, and that he had, following the arrest, made an oral confession to the charge. Appellant denied all charges against him. At the end of the trial, a jury verdict of guilty was returned, and appellant was sentenced to thirty (30) years imprisonment, with the sentence to run consecutive with a fifteen (15) year sentence from a prior conviction for a total of forty-five (45) years to serve. From this adverse determination, Dedeaux perfected his appeal to this Court.

I. DID THE LOWER COURT ERR IN OVERRULING APPELLANT'S MOTION TO STRIKE THE JURY PANEL ON THE GROUND THAT THE STATE IMPERMISSIBLY USED ITS PEREMPTORY CHALLENGES TO STRIKE ALL MEMBERS OF APPELLANT'S RACE, THE BLACK JURORS?
In the trial below, the State utilized four (4) of its peremptory challenges to strike all four (4) remaining black members of the final jury panel made up of twenty-four (24) persons. Dedeaux entered a timely motion that the jury panel be stricken on the grounds that the State "systematically and arbitrarily" excluded members of the black race, wherein a black was being tried, for no reason through the use of peremptory challenges. The State upon request of Dedeaux refused to give any reason why *888 the black members of the panel were stricken other than stating that such was not racially motivated. The lower court declined to make the State give its reasons for utilizing its peremptory challenges in such a manner stating, "... I can't make either one of you, under the law to my knowledge, state why you struck somebody peremptorily."
The present case was tried in the latter part of February, 1986. On April 30, 1986, the United States Supreme Court rendered its decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Under Batson, a state criminal defendant can establish a prima facie case of the impermissible exclusion of black jurors through use of peremptory challenges by showing: (1) that he is a member of a "cognizable racial group," (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of the defendant's race and (3) that attendant facts and circumstances infer that these challenges were made for the purpose of striking minorities from the jury. Batson, 476 U.S. at 94-98, 106 S.Ct. at 1722-1723, 90 L.Ed.2d at 87. Further, the defendant may rely on the fact, in making his claim, that peremptory challenges constitute a jury selection practice that provides "those to discriminate who are of a mind to discriminate." Id.
When the defendant has made a prima facie case in accord with the above standard, the burden of proof shifts to the State to come forward with a racially neutral explanation for each of the challenges. The explanation must be related to the particular case being tried. Batson, supra. The above stated Batson reasoning has been recognized and adopted by this Court. See Harper v. State, 510 So.2d 530 (Miss. 1987) and Williams v. State, 507 So.2d 50 (Miss. 1987).
As seen from the facts of the trial below, Dedeaux properly put the improper use of peremptory challenges to exclude blacks into issue, pursuant to Batson, supra. As such, the State erred when it refused to provide a neutral explanation for each of the challenges. This is not to place fault with the State for not providing or the court for not requiring neutral reasons, because Batson had not been decided at the time of trial. But, due to the fact that Batson has been given retroactive effect to all cases pending on direct review or not yet final, Griffith v. Kentucky, 479 U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); Harper, supra; Williams, supra, it must necessarily be the governing law of the case sub judice. In a retroactive application of Batson the case may be remanded to the trial court for a hearing in which the State is afforded the opportunity to come forward with neutral explanations for each black juror stricken by peremptory challenge. This is the course we must ultimately follow today.

II. WAS DEDEAUX DENIED A SPEEDY TRIAL?
Appellant argues that his right to a speedy trial under the Sixth Amendment of the United States Constitution was violated due to the fact that the crime for which he was charged (sale of cocaine) occurred on December 12, 1984, and he was not indicted until September 19, 1985. Further, no arrest was made until October 4, 1985. As such, there was a delay of approximately ten (10) months from the time of the criminal act to the charge and arrest. The State counters Dedeaux's argument by explaining that the indictment was not handed down until September, 1985 due to the fact that there was an ongoing undercover drug operation in process on the Mississippi Gulf Coast, which would have been "blown" if appellant had been arrested or indicted at an earlier date.
This Court has stated that a simple delay between the date of an offense and the date of an indictment is not per se reversible error, particularly when the reason for the delay (as in the case sub judice) is for the purpose of concealing the identity of an undercover agent for a reasonable period of time so that he may continue to work effectively as an agent. Campbell v. State, 309 So.2d 172 (Miss. 1975); Page v. State, 295 So.2d 279 (Miss. 1974). But, as recognized and adopted by the Court in *889 both Page and Campbell, the determination of whether or not a defendant's right to a speedy trial has been violated must be measured by the four (4) part balancing test espoused by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The proper inquiry is: (1) what was the length of delay; (2) what was the reason for the delay; (3) did the defendant assert his right to a speedy trial; (4) was the defendant prejudiced by the delay. Page, supra; Campbell, supra. In the present case, there was a ten-month delay caused by the State's pursuance of a continuing undercover operation. Dedeaux did not assert his right to a speedy trial until the first day of the trial below. Finally, the only apparent prejudice suffered by appellant as a result of the delay was that he could not remember where he was on the date of the charged offense, December 12, 1984. This did not prevent Dedeaux from absolutely denying that he had anything to do with any drug transaction. Appellant's disability to remember his whereabouts on December 12th may have adversely affected the credibility of his absolute denial; nevertheless, all of the above factors are balanced together as required by the Barker case, it can hardly be said that Dedeaux's right to a speedy trial was denied.[1] The assignment of error is without merit.

III. DID THE LOWER COURT ERR IN ALLOWING AN ORAL CONFESSION INTO EVIDENCE?
At trial, the State sought to prove that immediately after the October 4, 1985 arrest was effected, while in the police car driving to the station, Dedeaux orally confessed to selling cocaine to Agent Sanderfer on December 12, 1984. Dedeaux promptly made a motion to suppress the statement, and a hearing on appellant's motion was held. During the hearing, Agent Sanderfer testified that Dedeaux was given his full Miranda warnings. Subsequently, Dedeaux stated to Sanderfer that there was no need to fight all of the drug-sale charges against him, because he and another person were the parties that sold the drugs to him (Sanderfer). Further, Sanderfer testified that Dedeaux's statement was not the product of any promises, threats, or coercion, and that the statement was voluntarily and freely given. Another police officer, Sergeant Clay McDonald corroborated all of Sanderfer's testimony as set forth above. On the contrary, Dedeaux flatly denied ever giving the statement, and as such did not challenge the voluntariness of the confession. The lower court determined that the statement was voluntarily and freely given, and that all constitutional protections were afforded to Dedeaux. Due to the fact that the statement alluded to other charges, the lower court restricted its use and required that Sanderfer only refer the "blanket" confession to the December 12, 1984 charge in question.
Dedeaux argues on appeal that the statement was too vague to be considered as a valid confession in that it did not specifically refer to the sale of drugs on December 12, 1984. Indeed, for a confession to be valid, it must be an acknowledgment in express terms of the crime charged. Reed v. State, 229 Miss. 440, 91 So.2d 269 (1956). But, generally speaking, all voluntary statements or confessions of the defendant are admissible when offered by the State for what weight they may have in the case. Jones v. State, 358 So.2d 414, 417 (Miss. 1978); Gilmore v. State, 225 Miss. 173, 82 So.2d 838 (1955). In the present case, the lower court stated that it would allow the statement into evidence for whatever weight it might be given, as is allowed by Jones, supra. Further, by making a "blanket" confession to all the drug sales to Sanderfer, Dedeaux did, in actuality, confess to the December 12, 1984 crime in question.
Where a trial court makes a determination of voluntariness, as in the present case, such is considered a finding of fact *890 that will not be reversed on appeal unless manifestly wrong, or contrary to the overwhelming weight of the evidence. Frost v. State, 483 So.2d 1345 (Miss. 1986); Clemons v. State, 316 So.2d 252 (Miss. 1975). As the trial court did not abuse its discretion, or commit manifest error in allowing Dedeaux's statement into evidence, the assignment of error is without merit.

IV. DID THE LOWER COURT ERR IN ALLOWING THE STATE "WIDE OPEN" CROSS-EXAMINATION WHICH IMPERMISSIBLY INFORMED THE JURY OF OTHER CHARGES AND EVIDENCE OF A FORMER TRIAL?
At trial, Agent Sanderfer testified that on the date of the charged offense, December 12, 1984, Dedeaux was driving a green pickup truck owned by Arbon Greg "Buttonhead" Lizana, an accomplice of Dedeaux's in prior drug activity. To rebut Sanderfer's testimony concerning the truck, and as such the credibility of Sanderfer, appellant called Lizana to testify. Lizana stated that Dedeaux did not have keys to his truck and that he did not let Dedeaux drive his truck on December 12, 1984, stating that, "I use my truck each and every day as a work truck. I didn't let him drive it."
On cross-examination the State asked Lizana when was the last time that Dedeaux was in his truck, and Lizana answered November 14th and November 16th of 1984. The State was seeking to impeach Lizana's testimony concerning the unavailability of his truck to Dedeaux. During the course of the cross-examination, numerous photographs taken on November 14th and 16th showing Dedeaux inside of, or in close proximity to Lizana's truck were utilized. Appellant argued at trial, and now on appeal that the State's cross-examination of Lizana concerning the November dates should not have been allowed due to the fact that separate charges against appellant relating to the sale of drugs arose on the dates in question. Dedeaux thus argues that the State injected evidence of other crimes into the trial through the cross-examination of Lizana.
The record reveals that during the cross-examination of Lizana, the State never developed or mentioned the fact that Dedeaux had sold drugs to Sanderfer on November 14th and November 16th, or that criminal charges or convictions against Dedeaux arose from the meetings. Consequently, appellant's argument concerning evidence of other crimes is unsound. As to the propriety of allowing the State to cross-examine Lizana about the relation of Dedeaux to his truck on dates other than the one on which the crime in question was committed, a trial court's rulings regarding the scope of cross-examination are subject to reversal only when there has been a clear abuse of discretion. Ward v. State, 479 So.2d 713 (Miss. 1985). Further, wide latitude is allowed in cross-examination, and its scope is not confined to matters about which a witness has testified to on direct examination. Rush v. State, 254 Miss. 641, 182 So.2d 214 (1966). Lizana was called by Dedeaux to discredit Agent Sanderfer concerning the use of the pickup truck in carrying out the charged drug sale. There was no error, amounting to an abuse of discretion on the part of the trial court, in allowing the State to show that Dedeaux had available to him Lizana's truck.

V. WAS IT ERROR TO ALLOW THE PYRAMIDING OF INFLAMMATORY AND IRRELEVANT EVIDENCE TO BE PRESENTED TO THE JURY?
Dedeaux argues that the State injected into the trial below so much inflammatory and irrelevant evidence that he could not possibly receive a fair trial. Massey v. State, 393 So.2d 472 (Miss. 1981). In Massey this Court reversed a rape conviction where the State continuously at trial brought up evidence of other crimes and bad acts of the defendant so as to result in substantial prejudice to him. In the present case, appellant complains that he was prejudiced by: (1) the State's use of the nickname "Squirrel" for Dedeaux (which was objected to only once by appellant *891 at the beginning of trial but thereafter was not objected to); (2) redundant questions by the State; (3) testimony by Agent Sanderfer that Dedeaux was pretending to have engine trouble when he arrived at the prearranged drug-buy location (an objection was sustained by the lower court on this point). None of the above could hardly be said to substantially prejudice appellant as in the Massey case. Dedeaux cites no other authority for his arguments under the above alleged error, and as such they will not be considered by this Court. Ramseur v. State, 368 So.2d 842 (Miss. 1979). The assignment of error is meritless.

CONCLUSION
Following the guidelines of Batson, Williams, and Harper, this case is remanded to the lower court with instructions that the State be given an opportunity to present neutral, non-race based explanations for each black juror stricken by a peremptory challenge. Dedeaux may, of course, rebut any of the State's explanations. If the lower court finds purposeful discrimination, it must order a new trial. But, if no purposeful discrimination is found, the cause is to be certified to this Court with a record containing the evidence and findings of fact by the lower court as to each black juror. Finding no further errors in the trial below, the lower court is to consider solely the Batson claim as set forth above.
REMANDED FOR A HEARING CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
GRIFFIN, J., not participating.
NOTES
[1] More precisely, Dedeaux might have alleged a due process violation for an unexcused and unreasonable delay in charging him with this crime, see Hooker v. State, 516 So.2d 1349 (Miss. 1987); however, we think it clear that Dedeaux's claim would fail under either analysis.