288 So.2d 860 (1974)
Arthur Lee WELLS
v.
STATE of Mississippi.
No. 47626.
Supreme Court of Mississippi.
January 21, 1974.
*861 Ramsey, Bodron & Thames, Paul Kelly Loyacono, Vicksburg, for appellant.
A.F. Summer, Atty. Gen. by Pete J. Cajoleas, Sp. Asst. Atty. Gen., Jackson, for appellee.
WALKER, Justice:
The appellant, Arthur Lee Wells, was convicted in the Circuit Court of Warren County for the crime of burglary of an occupied dwelling and sentenced to ten years in the state penitentiary, and from that judgment, he prosecutes this appeal. We affirm.
A detailed narration of the evidence presented to the jury is not necessary and only those facts which are relevant to the alleged errors will be discussed.
The appellant first complains that the trial court improperly granted the State two continuances, one on July 24, 1972, and another on July 26, 1972, over the objection of the defendant who was thereafter tried at the next term of court on November 16, 1972. The thrust of appellant's argument is that the State failed to furnish the affidavit called for in Mississippi Code Annotated section 99-15-29 (1972). That section reads as follows:
On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done. The court may grant or deny a continuance, in its discretion, and may of its own motion cross-examine the party making the affidavit. The attorneys for the other side may also cross-examine and may introduce evidence by affidavit or otherwise for the purpose of showing to the court that a continuance should be denied. No application for a continuance shall be considered in the absence of the party making the affidavit, unless his absence be accounted for to the satisfaction of the court. A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom.
Where the requirements of section 99-15-29 are not strictly complied with, a denial of the continuance shall not be grounds for a reversal unless the Supreme Court shall be satisfied that injustice resulted therefrom. Dean v. State, 234 Miss. 376, 106 So.2d 501 (1958). However the problem here is that the continuance was granted and the defendant has not cited any case nor are we able to find a case where a continuance was granted the State that this Court has held that failure to comply with section 99-15-29 was reversible error. Therefore, the error, if any, must be predicated upon the defendant being denied a speedy trial. In this regard, the record reflects that the defendant was indicted on December 2, 1971; that on January 28, 1972, a motion was made on his behalf by his attorney that he be sent *862 to the Mississippi State Hospital for a mental examination; that he was sent to the hospital and remained there until May, 1972, after which he was returned to the Warren County jail; that his case was set for trial at the next term of court on July 24, 1972; that due to the absence of a material witness said cause was continued on the State's motion until July 26; that on July 26 said cause was again continued on the State's motion due to the absence of the same material witness until November 16, 1972, at which time the defendant was tried, convicted and sentenced. In the case of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) which upheld a conviction of a defendant who was not tried for five years after indictment, the Court, after rejecting the rule that a defendant who fails to demand a speedy trial waives this right, and declining to specify any time period within which an accused must be offered a trial went on to say:
A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which court should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.
The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiring into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.
Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
We have already discussed the third factor, the defendant's responsibility to assert his right. Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.
A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately *863 to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.
......
We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.
The difficulty of the task of balancing these factors is illustrated by this case, ... . (407 U.S. at 530-533, 92 S.Ct. at 2192, 33 L.Ed.2d at 116-119).
There is nothing in the record to indicate that any evidence or any witness was available to appellant on July 24 or July 26, 1972, when the State's motion for a continuance was granted which was not available to him when he was tried on November 16, 1972. Further, the delay in being brought to trial was partially brought about by defendant's own motion in January of 1972 which resulted in his being sent to the Mississippi State Hospital for a mental examination. After the examination was completed in May, 1972, his case was set for trial at the next term of court which was in July, 1972. The case was then continued, over his objection, due to the absence of a material witness for the State, until the next succeeding term which was in November of 1972, at which time he was tried, convicted and sentenced. When the facts of this case are weighed with the criteria prescribed in the Barker case, supra, in mind, we are unable to say that appellant was deprived of his due process right to a speedy trial.
The appellant next complains that he should have been released on his own recognizance from the time of the continuance on July 26 until his trial on November 16, 1972, as he was an indigent and unable to make a surety bond or post a cash bond in any amount. We have considered this contention and find it to be wholly without merit. The fixing of bail, whether it be in an amount certain or by recognizance, is left to the sound discretion of the trial judge and his judgment in that regard will not be disturbed unless there is a showing of manifest error or abuse of discretion.
The appellant next complains that the manner in which the district attorney cross-examined the appellant with reference to prior convictions was improper. In this regard, while defendant was testifying in his own behalf, he was asked the following question by his own attorney: "... Have you ever been convicted of anything: Have you ever been in jail before?" To which he answered: "Yes, sir." Appellant's attorney did not pursue the questioning any further and did not ask appellant what crime or crimes or misdemeanors of which he had been convicted. Thereafter, when appellant was tendered to the State for cross-examination, the district attorney asked the following questions and several others similar in nature:
Q... . Arthur, do you deny that on September 3rd, 1962 that you were convicted in Kankakee, Illinois as a party to a crime and received sentence of the Court?
......
A. Yes, I remember that.

*864 Q... . Do you deny that in Chicago, Illinois, Cook County Court, that you were convicted of trespass 
......
Q.  on February 22nd, 1963?
......
A. For trespassing? ... Yes sir, I remember that.
In addition to the above questions, the district attorney asked appellant eleven other questions concerning crimes which he admitted that he had been convicted. Each of the district attorney's questions were similar in form to the above questions and each time that a question was asked, the appellant's attorney objected thereto.
It is apparent in this instance that the district attorney was attempting to abide by the prior decisions of this Court where it has been held numerous times that evidence cannot be introduced to contradict a witness with reference to his convictions, unless he first denies them. Matthews v. State, 243 Miss. 568, 139 So.2d 386 (1962). However, that does not mean that the prosecuting attorney may begin his cross-examination by asking whether the defendant denies that he was convicted of a particular crime on a particular date in a particular court. The defendant should first be given the opportunity to enumerate his prior convictions such as trespass, burglary, assault and battery or whatever they might be. In McElroy's Mississippi Evidence, section 130, pages 404-405 (1955), the rule is stated thusly:
To impeach the credibility of a witness he may be asked (1) if he has ever been convicted of a crime, and if his answer is in the affirmative, he may be further asked, (2) what was the crime or misdemeanor, but never is he permitted to be asked any other questions about [the details of] the offense, ...
The appellant's contention in this regard is that once he had responded to his attorney that he had been convicted of a crime that he could not be cross-examined further on this point. This contention is without merit. The district attorney had the right to ask of what crimes appellant had been convicted. Miss. Code Ann. §§ 13-1-11, 13-1-13 (1972). The procedure which the district attorney used to obtain appellant's testimony with regard to prior convictions was error, but was not reversible error under the facts of this case.
The proper procedure for the district attorney to have used was to simply ask appellant of what crimes or misdemeanors he had been convicted since appellant had already responded to his own attorney that he had been convicted of a crime. If he then failed to fully enumerate all of his prior convictions, then the district attorney could properly ask him, by way of refreshing his memory and to lay a predicate for impeachment, if he denied being convicted of a particular crime on a particular date in a particular court, but without going into the details of such crime or the punishment received. We would point out, however, that it is dangerous to ask such a question unless the State is ready to prove the prior conviction by competent evidence in the event that convictions are denied by defendant. Johns v. State, Miss., 255 So.2d 322 (1971).
The appellant next contends that the court erred in refusing to grant the following instruction:
The Court instructs the Jury for the Defendant, Arthur Lee Wells, that this Defendant is presumed to be completely innocent of the crime charged in the indictment. [This presumption of innocence is not mere legal form but is a substantial legal right, established by the law of the land and guaranteed to this Defendant and it demands that each and every juror on this panel shall at the outset of this trial consider the Defendant to be wholly innocent of the crime charged against him and totally innocent of every evil intent and guilty mind necessary *865 to constitute this crime. This presumption stands for the Defendant, and demands a verdict of not guilty. This presumption is no mere fiction but is for the Defendant and is a shield against an unjust conviction throughout every step of the trial] and you must find the Defendant not guilty unless this presumption has been overcome by competent creditable evidence establishing the Defendant's guilt beyond every reasonable doubt and to a moral certainty. (Emphasis added).
A similar instruction was condemned in Carr v. State, 192 Miss. 152, 4 So.2d 887 (1941) where Judge Alexander in an eloquent opinion said:
The so-called presumption requires evidence of guilt, but is not evidence of innocence. Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann.Cas. 1138; 1 Wharton, Criminal Evidence, sections 69, 73; 9 Wigmore on Evidence (3 Ed.), p. 409, 28 Cal.L.Rev. 519; 44 Harv.L. Rev. 906, 908; Thayer, Preliminary treatise on Evidence, p. 553. It does not "command" the jury to find the defendant not guilty; it merely requires them to assume his innocence... .
The force of the "presumption" as a valuable right available to the defendant is not conserved by tolerating its expression in the fantastic phrases accepted as appropriate adjuncts to trial eloquence, whence, indeed, its bombast was borrowed. Bradner, Evidence, section 460; Thayer, op. cit. supra, p. 553. Only its existence and its legal effect upon the burden of proof should be stated by the trial court, whose tongue should not be borrowed for those vagaries in which counsel remain free to indulge. We must not ignore this occasion to condemn its use. (192 Miss. at 157, 4 So.2d at 888, 889).
In condemning the above instruction, we readopt the language of the Carr decision and would point out that the portion of the instruction which we have included in brackets, particularly the underlined portion thereof, is the type of phrases and vagaries condemned by Judge Alexander. Therefore, the instruction was properly refused.
Finally the appellant assigns as error the trial court's refusal to grant one of his instructions with reference to "reasonable doubt." This is without merit since the jury was otherwise adequately instructed in this regard.
For the reasons stated above, the judgment of the lower court is affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, INZER and BROOM, JJ., concur.