PRATHER, Justice,
for the Court:
The habitual offender sentencing statutes are the basis for a constitutional separation of powers challenge in this criminal appeal from the Circuit Court of Walthall County. Obie D. Washington, appellant, was convicted of rape and sentenced as a recidivist, in a bifurcated hearing, to thirty years in the custody of the Mississippi Department of Corrections. He appeals asserting that:
(1) The court erred in overruling the defendant’s motion to quash the indictment, on the grounds that the said indictment was procured in violation of section 1 and section 2 of Article 1 of the Constitution of the State of Mississippi, and in violation of the rights of the defendant under the Sixth Amendment of the Constitution of the United States.
(2) The court erred in refusing the defendant’s jury instruction No. D-9 which he claims was violative of his Sixth Amendment right under the federal constitution to call and confront his own witnesses.
(3) The court erred in permitting the state to introduce the evidence of prior convictions of the defendant and hearsay evidence about the defendant’s reputation in the community for truth and veracity.
I.
On the morning of June 5, 1982, just before 8:00 a.m., Annette Holmes, a 25 year old victim of cerebral palsy, was raped near her home.
Holmes was taken to the Walthall County General Hospital where samples of her hair and blood were taken, along with internal and external vaginal swabs.
Annette identified her attacker as Obie D. Washington, who was charged with forcible rape of a female over the age of twelve (12) years in violation of Miss.Code ■Ann. § 97-3-65(2) (1984 Supp.) and as a habitual criminal within the meaning of Miss.Code Ann. § 99-19-81 (1984 Supp.).
Prior to his trial, Washington moved to quash the indictment on both Mississippi and U.S. Constitutional grounds. The motion was overruled. He also moved to have the semen sample, that was removed from *1030 the victim, made available for independent testing, but was informed by the district attorney that the entire quantity had been used in testing by the Mississippi Crime Lab.
At trial, Annette Holmes was the only eyewitness to testify. Five other witnesses, all residents of Cato Street, testified that they saw Obie D. Washington on their street on the morning of June 5, 1982 at times ranging from 5:00 a.m. to 7:00 a.m. There was testimony given on Washington’s behalf, all from members of his family, that he was at home from 1:00 a.m. Saturday, June 5, until the police came to arrest him.
Larry Turner, a forensic serologist at the Mississippi Crime Lab, testified that the vaginal swabs taken from Annette Holmes contained seminal fluid from a person of non-secretor status. He testified that a blood sample taken from Obie D. Washington indicated that Washington was a non-secretor. Finally, Turner testified that twenty percent of the population are non-secretors.
Obie D. Washington testified on his own behalf, and on cross-examination was questioned about his prior convictions. The defense counsel made a timely objection which was overruled. After the defense rested, the state put on rebuttal evidence, again over the objections of defense counsel. Chief of Police Lavon Magee testified that he knew of Washington’s reputation for truth and veracity and that that reputation was bad.
Washington was found guilty by a unanimous jury and, in a bifurcated sentencing hearing, was sentenced to 30 years in the state penitentiary.
These facts give rise to the following assignments of error.
II.
Did the court err in overruling the defendant’s motion to quash the indictment on the grounds that the said indictment was procured in violation of section 1 and section 2 of Article 1 of the Constitution of the State of Mississippi, and in violation of the rights of the defendant under the Sixth Amendment of the Constitution of the United States?
Appellant challenges the constitutionality of Mississippi Uniform Criminal Rule 6.04 and Miss.Code Ann. § 99-19-81. For consideration of this issue we divide our discussion into two parts:
(A) Miss.Code Ann. § 99-19-81 and Mississippi Uniform Criminal Rules of Circuit Court Rule 6.04 violate the separation of powers doctrine.
(B) Appellant was denied a fair trial because the grand jury was infected with the knowledge he was an habitual criminal.
A. Violation of the Separation of Powers Doctrine.
Appellant bases his legal argument, in part, on Article I, Section I of the Mississippi Constitution which is as follows:
The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.
He also bases his argument on Article 1, section 2 which reads in pertinent part:
No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others ....
Washington was indicted as an habitual offender under Miss.Code Ann. § 99-19-81, as follows:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall *1031 not be reduced or suspended nor shall such person be eligible for parole or probation.
Following this statute and Mississippi Uniform Criminal Rules of Circuit Court Practice 6.04(1),[1] the appellant contends that the function of sentencing has been transferred from the exclusive control of the judiciary to the office of the prosecuting attorney, an executive officer, violating the separation of the powers doctrine. This shift, claims the appellant, comes about by the use of the prosecutorial discretion in electing, or refusing, to indict as an habitual criminal.
Analyzing this argument, this Court notes first that the fixing of punishment in criminal cases is a question of legislative policy. Gabriel v. Brame, 200 Miss. 767, 28 So.2d 581 (1947); Jordan v. State, 383 So.2d 495 (Miss.1980); Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 1285, 2 L.Ed.2d 1405 (1958); 24B C.J.S. § 1975 Criminal Law, p. 539.
In People v. Pettigrew, 123 Ill.App.3d 649, 78 Ill.Dec. 919, 462 N.E.2d 1273 (Ill.App. 4th Dist.1984) the defendant argued that the authority of the state’s attorney to invoke the habitual criminal statute was actually a sentencing power and under the state constitution such power belonged exclusively to the judicial branch. The Illinois Appellate Court responded, “The power to petition the court to invoke the sanctions of the Act is not the power to sentence.” Id. 78 Ill.Dec. at 921, 462 N.E.2d at 1275. The Court went on to uphold the constitutionality of the Act.
In the similar Indiana case of Thomas v. State, 471 N.E.2d 681 (Ind.1984), prosecuto-rial discretion, contended the defendant, improperly gave the executive branch the power to determine certain sentences. In response, the Indiana Supreme Court stated:
We have repeatedly held adversely to defendant’s position, since it is clear that a prosecutor is always permitted some selectivity in every case as to whether or not to charge a violation of a criminal statute. The habitual offender statute does not contravene the constitutional provisions providing for separation of powers in the respective branches of our government.
Id. at 683-684. Also, see Knight v. State, 243 Ga. 770, 257 S.E.2d 182 (1979), State v. Badon, 338 So.2d 665 (La.1976), Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) (conscious selectivity in enforcement of a habitual criminal statute is not in itself a violation of the Federal constitution where the selection is not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification).
The argument in the case sub judice is almost identical to the arguments in Petti-grew and Thomas. It is this Court’s opinion there is no merit to this argument.
B. Appellant Denied a Fair Trial.
The appellant asserts that he was denied a fair trial because the indictment was returned by a grand jury that “was told the defendant is a habitual criminal, and such allegations were put on record before the court at the inception of the trial, prior to the sentencing phase.” It is claimed that the right to enhanced punishment matures only after conviction on the principal charge. Rule 6.04 specifically requires pri- or convictions to be set out in the indictment when an enhanced penalty is sought under Miss.Code Ann. § 99-19-81 in part as follows:
The indictment must include both the principal charge and a charge of previous convictions. The indictment must allege *1032 with particularity the nature or description of the offense constituting the previous felonies, the state and federal jurisdiction of previous conviction, and the date of judgment.
Established caselaw of this jurisdiction has long established that where prior felony convictions are used to enhance punishment for a subsequent offense, specificity concerning the jurisdiction of the prior convictions, the date of the judgment, and the nature and description of the offense must be included in the indictment or affidavit. Lay v. State, 810 So.2d 908 (Miss.1975); Watson v. State, 291 So.2d 741 (Miss.1974); Burnett v. State, 285 So.2d 783 (Miss.1973); Ladnier v. State, 273 So.2d 169 (Miss.1973); McGowan v. State, 269 So.2d 645 (Miss.1972); Branning v. State, 224 So.2d 579 (Miss.1969). 39 Am.Jur.2d Habitual Criminals, etc., § 20, (1968). The prior convictions are required to be in the indictment so the defendant will know what convictions the state is relying on to bring him under the habitual criminal sentencing statute.
A grand jury of necessity has to be informed of prior convictions before an indictment seeking enhanced punishment can be sought by the state. It must be noticed, however, that no grand jury member would ever be used as a trial juror. Nor would the trial jurors ever be read an indictment during the trial on the principal charge. After conviction on the principal charge, a separate trial is had for the sentencing phase of the proceeding. Mississippi Uniform Criminal Rules of Circuit Court Practice 6.04(1) and 6.04(2). However, previous convictions may be mentioned by the state for purposes of impeaching the defendant’s testimony, as rules 6.04(1) and 6.04(2) provide:
The indictment shall not be read to the 3’ury.
(2) Separate trials shall be held on the principal charge and on the charge of previous convictions. In the trial on the principal charge, the previous convictions will not be mentioned by the state or the court except for impeachment purposes.
This Court holds that there is no constitutional violation in this procedure of informing the grand jury of the defendant’s prior convictions. Sufficient safeguards are contained within the procedural rule of Mississippi Uniform Criminal Rules of Circuit Court Practice 6.04 to guarantee a fair trial.
III.
Did the court err in refusing the defendant’s jury instruction No. D-9?
Defendant’s instruction D-9 reads in its entirety:
The court instructs the jury that if the semen samples collected from the body of the complaining witness were not made available for scientific tests and comparative analysis to the defendant by the prosecution, then you may infer from such failure on part of the prosecution that if these tests were in fact performed, the results would be adverse or unfavorable to the prosecution’s case.
The defendant’s counsel requested semen for independent testing, but was informed that all semen had been consumed in prior testing. The inability to do independent testing, the appellant asserts, denied him his Sixth Amendment rights to call his own witnesses and to challenge the testimony of the witnesses of the state. The general rule as to destruction or spoliation is stated thusly:
It is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises a presumption, or, more properly, an inference, that this evidence would have been unfavorable to the case of the spoliator. Such a presumption or inference arises, however, only where the spoliation or destruction was intentional and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent. [Emphasis added].
29 Am.Jur.2d Evidence, § 177 (1968).
In a recent case, the Fifth Circuit Court of Appeals combined the “good faith” re *1033 quirement with two other factors. Citing Armstrong v. Collier, 536 F.2d 72, 78 (5th Cir.1976) the Court said, “In Armstrong v. Collier, a case in which the state misplaced the requested evidence, this Court enumerated three factors to consider in determining whether to excuse the state: the State’s bad faith or negligence, the importance of the evidence, and the other evidence of guilt adduced at trial.” Johnston v. Pittman, 731 F.2d 1231 (5th Cir.1984), cert. denied, — U.S. -, 105 S.Ct. 789, 83 L.Ed.2d 783.
Regarding an insufficiency of substance for analysis, this Court has held that due process does not require dismissal of the charges where the state is unable to comply with defendant’s motion because the substance was exhausted in the process of analysis. Poole v. State, 291 So.2d 723 (Miss.1974).
In this case there is no evidence that Herring’s tests were unauthorized or that the state was negligent. However, Herring was not allowed to testify about the results of his tests because the defendant was not supplied a copy of the test results prior to the trial.
In light of the general rule and the Fifth Circuit test, and in the absence of any showing of bad faith, defendant’s instruction No, D-9 appears to be an incorrect statement of the applicable law. This Court holds that it was proper to refuse the instruction and the refusal did not violate appellant’s Sixth Amendment rights.
IV.
Did the court err in permitting the state to introduce evidence of prior convictions of the defendant and hearsay evidence about the defendant’s reputation in the community for truth and veracity?
The prosecution has a right to cross-examine a defendant concerning his previous convictions for the purpose of impeaching his credibility as a witness. Bridges v. State, 336 So.2d 1309 (Miss.1976). That right is reserved in Miss.Code Ann. § 13-1-11 (1972). The proper procedure to follow is stated in Wells v. State, 288 So.2d 860 (Miss.1974).
In the case at bar the state clearly had a statutory right to impeach appellant with his prior convictions. In addition, the state clearly stayed within the bounds prescribed by law.
Likewise, when appellant took the stand to testify on his own behalf he placed his veracity in issue. This justified the state in making an attack thereon. Ables v. State, 223 Miss. 770, 79 So.2d 241 (1955). The testimony given by Chief of Police Magee as to appellant’s reputation for truth and veracity was within the bounds of the law and no error should be predicated on it.
Finding no merit to the error assigned, this Court affirms the conviction and sentence of the defendant.
AFFIRMED.
PATTERSON, C.J., and WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN, and ANDERSON, JJ., concur.

. In cases involving enhanced punishment for subsequent offenses under state statutes, including but not limited to, the Habitual Criminal Statute, Miss.Code Ann. Sections 99-19-81 and 99-19-83 and the Uniform Controlled Substances Law, Miss.Code Ann. Section 41-29-147:
(1) The indictment must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offense constituting the previous felonies, the state or federal jurisdiction of previous conviction, and the date of judgment.