MYERS, P.J., for the Court.
¶ 1. Before this Court is an appeal filed on behalf of Henry Lonzo Boone, III from his conviction in the Circuit Court of Jackson County of capital murder during the commission of a robbery as defined by Mississippi Code section 97-3-73 (2004). On August 19, 2004, the jury returned a guilty verdict against Boone, finding that on November 6, 2002, Boone shot and *516 killed his own father, before fleeing the scene with his father’s gun and car. The trial judge sentenced Boone to a term of life, without the possibility of parole, in the custody of the Mississippi Department of Corrections. Boone now appeals raising the following issues:
I. WHETHER THE TRIAL COURT ERRED IN DENYING BOONE’S MOTION TO DISMISS FOR FAILURE TO GRANT A SPEEDY TRIAL?
II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE BOONE’S “TWO THEORY” INSTRUCTION TO THE JURY OR ALTERNATIVELY IN FAILING TO REFORM ANY DEFICIENCIES IN THE INSTRUCTION OR OFFER COUNSEL AN OPPORTUNITY TO PREPARE ANOTHER INSTRUCTION?
III. WHETHER THE VERDICT OF THE JURY WAS CONTRARY TO LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
IV. WHETHER BOONE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL?
¶2. Finding no error, we affirm the ruling of the trial court.
STATEMENT OF THE FACTS
¶ 3. At approximately 11:20 p.m., on November 6, 2002, Deputy Brian Cooper of the Jackson County Sheriffs Department and Lieutenant Brian Vice of the Moss Point Police Department were simultaneously dispatched to the scene of a single car roll-over accident on Saracennia Road a few miles north of Moss Point, Mississippi. At the scene of the accident, the officers discovered a white male trapped in a Ford Taurus bearing Mississippi license plate number U.S. Armed Forces 1732 D and registered to Henry Lonzo (H.L.) Boone, II. However, the driver and sole occupant of the vehicle was H.L.’s son, Henry Lonzo Boone, III (Boone). Boone was unconscious and suffering from life-threatening injuries.
¶ 4. While emergency medical technicians worked to remove Boone from the vehicle, Lieutenant Vice conducted a routine sweep of the accident debris field. Approximately seventy feet from the overturned vehicle, Lieutenant Vice discovered a .38 caliber revolver. Lieutenant Vice retrieved the revolver and immediately turned it over to Deputy Charlie Myers of the Jackson County Sheriffs Department. Deputy Myers turned the weapon over to Deputy Cooper, who then cleared the chamber by dropping the three live rounds and two spent shell casings contained therein onto the back seat of his patrol car. Deputy Myers then reported the revolver’s serial number to the National Crime Information Computer,[1] secured the weapon and its contents in his patrol car, and returned to assist with the extraction of Boone.
¶ 5. Sergeant Bryan White of the Jackson County Sheriffs Traffic Division arrived on the scene of the accident at approximately 11:45 p.m. Shortly thereafter, Deputies Cooper and Myers were dispatched from the accident scene to a burglary in progress at 9490 Lotus Drive, less than three miles from the accident scene. The deputies arrived within minutes of the dispatch, and immediately conducted a sweep of the exterior of the residence where they discovered an elderly man on *517 the back patio. The unidentified man was bleeding profusely and had lost auditory function as a result of a gunshot wound to the head. After determining that the injured man was not a threat, the deputies asked the homeowner, Jan Pendergrass, to step outside. Pendergrass then identified the man as her father and next door neighbor, H.L. Boone. H.L. had apparently been trying to wake Pendergrass, but in his weakened condition had managed only to arouse her suspicion that someone was attempting to break into her home.
¶ 6. Once an ambulance had arrived and H.L. was under the care of emergency medical personnel, Deputies Cooper and Myers walked next door to H.L.’s home. There they encountered a blood smeared doorway and blood soaked recliner with a .38 caliber bullet lodged in the headrest. The deputies recalled that they had recovered a .38 caliber revolver minutes earlier at the scene of Boone’s accident, and that the car in which Boone had been driving was registered to H.L. Immediately the deputies recognized the possibility that Boone may have shot his father while robbing him of his gun and ear. The investigation then proceeded as an assault during the commission of a robbery. However, four days later, on November 10, 2002, H.L. Boone died as a result of his wounds, never having identified his attacker. The investigation was then elevated from an assault during the commission of a robbery, to murder during the commission of a robbery, a capital offense.
¶ 7. Meanwhile, Boone was transported to Singing River Hospital in Pascagoula, where he remained in a com a for nearly three weeks. On November 8, 2002, and prior to Boone’s release from the hospital, law enforcement officials formally requested that the State Crime Lab conduct gunshot residue (GSR) analysis on samples taken from Boone’s hands and from the steering wheel of his father’s car. On November 26, 2002, Boone was released from the hospital and immediately taken into custody on the charge of capital murder. However, due to an apparent combination of backlog and neglect, the crime lab failed to complete the GSR report on Boone and the steering wheel until August 19, 2003. Despite the fact that no traceable GSR was found on either Boone or the steering wheel, the district attorney presented the evidence against Boone to a grand jury, and an indictment was returned on October 9, 2003, charging Boone with capital murder. Boone, who had been in custody since his arrest on November 26, 2002, filed a motion to dismiss for failure to grant a speedy trial on November 5, 2003, he was arraigned on January 23, 2004, and his trial was set for May 3, 2004, but continued upon an agreed order until August 16, 2004.
¶ 8. Boone’s trial began as scheduled on August 16, 2004, and substantial circumstantial evidence was presented in support of the State’s argument that a drunken and murderous Boone shot his own father, in cold blood and with his father’s own gun, then fled the scene with the gun and in his father’s car. The evidence presented by the State included the testimony of Michael Knight that at or around 11:00 p.m. on November 6, 2002, after Knight and Boone had spent some time drinking beer together, Knight dropped Boone off at Boone’s trailer home. Boone’s trailer home is located approximately 100 yards from his father’s home and 150 yards from the home of his sister, Jan Pendergrass. Several area residents testified to hearing strange noises shortly after 11:00 p.m. One neighbor testified to hearing loud bangs, similar to the repeated slamming of a car door, and another testified that she thought she heard her horses kicking the side of her barn. Both neighbors testified to hearing a car door slam, tires squeal, *518 and a car speed off from the area moments after hearing the unidentified loud bangs. There was also testimony from Phillip Dees, H.L.’s grandson-in-law and Boone’s nephew-in-law, that the gun found at the scene of Boone’s accident belonged to H.L. and was kept in a magazine rack in the den where H.L. was shot. Furthermore, ballistics tests proved that the gun found at the scene of Boone’s accident fired the bullet found lodged in the headrest of H.L.’s blood soaked reeliner. The forensic evidence suggested that the assailant fired once, grazing H.L.’s cheek and earlobe, and then fired a second and ultimately fatal shot into the front left portion of H.L.’s head. Finally, a State Crime Lab expert testified that the absence of GSR on Boone’s hands or on the steering wheel in no way proved that he had not recently fired a weapon.
¶ 9. In his defense, Boone first argued that the bullet recovered from his father’s body was too badly damaged to be traced to a specific gun. He also argued that the two spent shell casings found in the .38 caliber revolver recovered from the scene of his accident did not match the three live rounds in the gun or any of the boxes of unused rounds found in H.L.’s home. Boone stressed that the GSR analysis performed on his hands and on the steering wheel were negative and that his fingerprints were not found on either the bullets or the murder weapon. Furthermore, he asserted that although he has no recollection of the night in question, he loved his father and would not have done anything to hurt him. Boone attributes his amnesia as to the events of the evening to an' alcoholic blackout or alternatively to the trauma suffered as a result of his accident. Blood alcohol concentration (BAC) analysis performed on Boone revealed that his BAC was .264% on the night of the accident, more than three times the legally permissible minimum level for the operation of a motor vehicle under Mississippi Code Annotated section 63-11-30(1) (Rev. 2004).
¶ 10. Despite the lack of direct evidence, the jury found the circumstantial evidence propounded by the State sufficient to find Boone guilty of capital murder, and handed down its conviction on August 19, 2004. Boone filed a motion for a new trial on August 27, 2004. After a hearing, the trial judge denied Boone’s motion and subsequently sentenced him to a term of life without the possibility of parole. From the disposition of the trial court, Boone now appeals.
LEGAL ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN DENYING BOONE’S MOTION TO DISMISS FOR FAILURE TO GRANT A SPEEDY TRIAL?
¶ 11. Boone’s first assignment of error is that the trial court erred in denying his motion to dismiss for failure to grant a speedy trial. “A defendant in a criminal case has a right to a speedy trial, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article 3, § 26 of the Mississippi Constitution.” Sharp v. State, 786 So.2d 372, 377(¶ 4) (Miss.2001). The Sixth Amendment to the United States Constitution provides that “in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.” In addition, Mississippi Code Annotated section 99-17-1 (2004) creates a statutory right to a speedy trial. Boone makes no allegation of a statutory violation and only challenges the trial judge’s failure to grant his motion to dismiss on a constitutional basis.
STANDARD OF REVIEW
¶ 12. Our standard of review is manifest error. Mitchell v. State, 792 *519 So.2d 192, 213(¶ 80) (Miss.2001). On appeal, factual determinations of a trial judge made in ruling on a motion to dismiss are entitled to the same deference as a jury-verdict and will not be reversed unless manifestly wrong. Id. Additionally, we must review Boone’s assertion of error for failure to grant a speedy trial under the four-factor balancing test as laid out by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and adopted by the Mississippi Supreme Court in Wells v. State, 288 So.2d 860, 862-63 (Miss.1974). The factors which must be balanced in light of the surrounding circumstances and on a case-by-case basis are: (1) the length of delay, (2) the reason for the delay, (3) the defendant’s assertion of his right to a speedy trial, and (4) any prejudice to the defendant resulting from the delay. Sharp, 786 So.2d at 372(¶ 15) (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182).
DISCUSSION
¶ 13. In applying the Barker factors to the present case, we note that the application is not mechanical; rather, we must look to the totality of the circumstances to determine if Boone was unlawfully denied his Sixth Amendment right to a speedy trial. Herring v. State, 691 So.2d 948, 955 (Miss.1997). Our Barker analysis follows:

1.Length of Delay

¶ 14. The first factor has been called a triggering mechanism, because until there is some delay which is presumptively prejudicial, there is no need for an inquiry into the remaining balancing factors. Barker, 407 U.S. at 532-33, 92 S.Ct. 2182. After review of the trial court record, we find the delay from Boone’s arrest to his trial to be approximately 522 days. “A delay of eight months or more between arrest and trial is presumptively prejudicial.” Reynolds v. State, 784 So.2d 929, 933(¶ 10) (Miss.2001). Where, as here, there has been an extensive delay prior to trial, that delay, “must be weighed heavily in favor of [the defendant].” Herring, 691 So.2d at 955. In the case sub judice, there was a ten-month delay between the arrest and indictment, and another six months passed between the indictment and the first trial setting. The State acknowledges that the delay in this case weighs in favor of Boone and requires this Court to apply the remaining Barker factors. However, this delay is not conclusively weighed against the State, and may be rebutted when balanced against the remaining factors. Id.

2. Reason for the Delay

¶ 15. Once the delay is found to be presumptively prejudicial, the burden of persuasion shifts to the prosecution to produce evidence justifying the delay. Id. (citing State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991)). The lower court found that the overwhelming majority of the delay in this case was a result of neglect on the part of the State Crime Lab in failing to timely process the physical evidence. Our supreme court has determined such delay to be neutral and not to weigh heavily against the State for purposes of determining constitutional speedy trial violations. State v. Magnusen, 646 So.2d 1275, 1281 (Miss.1994). Thus, this factor does not weigh in favor of either party.

3. Defendant’s Assertion of his Right

¶ 16. The defendant’s assertion of his right to a speedy trial is afforded strong evidentiary weight. Barker, 407 U.S. at 531, 92 S.Ct. 2182. It is well-established that the State bears the burden of bringing the accused to trial in a speedy manner. Id. However, “the defen *520 dant bears some responsibility to assert his right to a speedy trial, and the failure to assert the right will make it difficult to prove he was denied a speedy trial.” Taylor v. State, 672 So.2d 1246, 1262 (Miss.1996). The record indicates that Boone filed a motion to dismiss for failure to grant a speedy trial on November 5, 2006, but this Court has consistently upheld the ruling of our supreme court in Perry v. State, 637 So.2d 871, 875 (Miss.1995), that “a demand for dismissal is not the equivalent of a demand for speedy trial.” See, e.g., Swindle v. State, 755 So.2d 1158, 1166(¶ 23) (Miss.Ct.App.1999). Here, the trial judge reviewed the speedy trial claim presented by Boone, analyzed the circumstances under the appropriate considerations, determined that the delay was not to be weighed against the State, and denied Boone’s motion to dismiss. Boone did not make a demand for a speedy trial until April 15, 2004, nearly seventeen months after his arrest, six months after he was indicted, four months after his trial date had been set, and less than three weeks before the trial was scheduled to commence. Thereafter, Boone’s attorney entered an agreed order of continuance with the assistant district attorney to postpone the case until August 16, 2004. Thus, this factor weighs heavily against Boone and in favor'of the State.
A Prejudice to the Defendant
¶ 17. The burden of persuasion is again upon the prosecution to show that Boone suffered no prejudice through the delay. Herring, 691 So.2d at 956. After review of the record, we can find no evidence of any actual prejudice suffered by Boone from the delay. The evidence acquired by the delay (negative gunshot residue test results) could be viewed as exculpatory, and therefore, the State acquired no advantage or benefit from the delay. Further, Boone’s assertion that the pretrial incarceration was oppressive is without merit. Boone made no attempt to secure bail, and therefore, he cannot argue that the incarceration caused him prejudice when he neither attempted to avoid it nor brought forth evidence of how the incarceration either disrupted his employment, drained his financial resources, curtailed his associations, subjected him to public obloquy, or created anxiety in him, his family, or friends. Id. This factor, too, weighs heavily against Boone and in favor of the State.
¶ 18. When evaluating Boone’s speedy trial claim under the totality of the circumstances, and after applying the Barker factors, we hold that Boone’s constitutional right to a speedy trial was not violated. Accordingly, we find no manifest error in the trial court’s denial of Boone’s motion to dismiss. Boone’s assignment of error is without merit.
II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE BOONE’S “TWO THEORY” INSTRUCTION TO THE JURY OR ALTERNATIVELY IN FAILING TO REFORM ANY DEFICIENCIES IN THE INSTRUCTION OR OFFER COUNSEL AN OPPORTUNITY TO PREPARE ANOTHER INSTRUCTION?
¶ 19. Boone’s second assignment of error is that the trial court erred in refusing to provide the jury with his proposed “two-theory” instruction D-6. Alternatively, Boone argues that if the instruction was inartfully worded, that the court should have either reformed the deficiencies or allowed his counsel an opportunity to prepare another instruction. During a conference on the jury instruction, the State properly objected to proposed instruction D-6, and the trial court ruled that the subject matter of the instruction was fully covered in other instructions already ac *521 cepted by the court and that giving the instruction would be redundant.
STANDARD OF REVIEW
¶ 20. “In determining whether error lies in the granting or refusal of a particular instruction, the instructions actually given must be read as a whole.” Johnson v. State, 823 So.2d 582, 584(¶ 4) (Miss.Ct.App.2002). If the instructions, when read as a whole, fairly announce the law of the case and create no injustice, no reversible error will be found. Id. Further, no one instruction is to be taken out of context. Poole v. State, 826 So.2d 1222, 1230(¶27) (Miss.2002). Finally, a defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. Id.
DISCUSSION
¶ 21. On appeal, Boone correctly argues that the case against him was based in large part, if not entirely, on circumstantial evidence. “In a case where all the evidence tending to prove the guilt of the defendant is circumstantial, the trial court must grant two jury instructions.” Jones v. State, 797 So.2d 922, 928-29(¶26) (Miss.2001) (see Parker v. State, 606 So.2d 1132, 1140 (Miss.1992)). The required instructions are:
First, the court must grant a jury instruction that every reasonable hypothesis other than that of guilt must be excluded in order to convict ... in addition to giving an instruction on circumstantial evidence, the trial court must grant a “two-theory” instruction such as D-7....

Id.

Instruction D-7, given by the trial court in Parker, 606 So.2d at 1140, reads as follows:
The Court instructs the jury that if there be a fact or circumstance in this case susceptible of two interpretations, one favorable and the other unfavorable to [the defendant], when the jury has considered such fact or circumstance with all the other evidence, if there is reasonable doubt as to the correct interpretation, you, the jury, must resolve such doubt in favor of [the defendant], and place upon such fact or circumstance the interpretation most favorable to him.

Id.

¶ 22. In the case sub judice, the trial court granted the typical circumstantial evidence instruction. However, Boone argues that the court failed to provide the jury with the required “two-theory” instruction when it failed to give proposed instruction D-6. The portion of the instruction which Boone argues should have been allowed reads as follows:
So, if the Jury, after careful and impartial consideration of all of the evidence in the case, has a reasonable doubt that a Defendant is guilty of the charge, it must acquit. If the Jury views the evidence in the case as reasonably permitting either of two conclusions — the Jury should of course adopt the conclusion of innocence.
¶ 23. No per se “two-theory” instruction was given to Boone’s jury. However, when the jury instructions are read as a whole, we find that the law is correctly stated and the provisions of the refused instruction are fairly covered elsewhere in the instructions. First, proposed instruction D-6 provides: “if the Jury, after careful and impartial consideration of all of the evidence in the case, has a reasonable doubt that a Defendant is guilty of the *522 charge, it must acquit.” Likewise, instruction D-5, given to the jury, provides in part: “The State must prove each and every element of the crime charged beyond a reasonable doubt and if you find that the State failed to prove each element of the crime charged beyond a reasonable doubt, then you must acquit the Defendant of the crime charged.” Second, proposed instruction D-6 provides: “If the Jury views the evidence in the case as reasonably permitting either of two conclusions-the Jury should of course adopt the conclusion of innocence.” Similarly, instruction D-2, given to the jury, provides in part: “You are instructed that if a reasonable doubt does arise, you must resolve said doubt, if any, in favor of the defendant and return a verdict of not guilty.” Therefore, we find that when read as a whole, the instructions given to the jury accurately state the law and fairly cover the content of a proper “two-theory” instruction.
¶ 24. We agree that Boone was entitled to have jury instructions given which presented his theory of the case. See Poole v. State, 826 So.2d at 1230(¶ 27). However, upon our review of the record we find no evidence as to what Boone’s theory might have been. In closing arguments, Boone’s counsel alluded to alternative theories such as suicide or a mystery gunman who just so happened to have discarded the murder weapon at the exact location where Boone would later crash his father’s vehicle, but we find no evidence in the record to support either theory as a reasonable hypothesis which should have been considered by the jury. As to Boone’s alternative argument, we find proposed instruction D-6 to have been adequately worded, although redundant, and therefore, we do not address whether the court should have either reformed the deficiencies or allowed his counsel an opportunity to prepare another instruction. Accordingly, we find no reversible error in the trial court’s refusal to give proposed jury instruction D-6. This issue is without merit.
III. WHETHER THE VERDICT OF THE JURY WAS CONTRARY TO LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 25. Boone’s third assignment of error is that the jury’s verdict was contrary to the overwhelming weight of the evidence. On this basis, Boone filed a motion for a new trial on August 27, 2004. The motion was denied. First, we note that before Boone may be entitled to a reversal based on the insufficiency of the evidence, he must overcome a formidable standard of review.
STANDARD OF REVIEW
¶ 26. “In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Herring v. State, 691 So.2d at 957 (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). “Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Id. (citing Benson v. State, 551 So.2d 188, 193 (Miss.1989)). Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. Id. (citing Mitchell v. State, 572 So.2d 865, 867 (Miss.1990)).
DISCUSSION
¶ 27. Our review of the record makes clear that there was ample circumstantial evidence for the jury to convict Boone of capital murder. First, there was testimony that placed Boone at or near the *523 scene of the crime at approximately 11:00 p.m. on the night of November 6, 2002. Next, several area residents testified to hearing loud bangs shortly after 11:00 p.m., and to hearing a car door slam, tires squeal, and a car speed off from the area moments after hearing the unidentified loud bangs. There was also testimony that the revolver found at the scene of Boone’s accident belong to H.L. Furthermore, ballistics tests proved that the revolver found at the scene of Boone’s accident fired the bullet that was lodged in the headrest of H.L.’s blood-soaked recliner. Finally, a State Crime Lab expert testified that the absence of GSR on Boone’s hands or on the steering wheel in no way proved that he had not recently fired a weapon.
¶28. The facts, when -viewed in the light most favorable to the verdict, indicate the a jury could find beyond a reasonable doubt and to the exclusion of every reasonable hypothesis that Boone shot his father in the head and then fled the scene with his father’s revolver and in his father’s car. The lower court correctly denied Boone’s motion for a new trial, and this Court will not disturb the jury verdict where, as here, no unconscionable injustice will result and there is ample evidence, albeit circumstantial, to support the jury’s findings. We find that the jury verdict was not against the overwhelming weight of the evidence, and therefore, affirm the verdict.
IV. WHETHER BOONE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 29. Boone’s final assignment of error is that his counsel rendered constitutionally ineffective assistance. Boone asserts counsel error on four grounds: (1) failure to file a motion demanding a speedy trial, (2) failure to question crime lab witnesses as to whether the lab would have conducted the gunshot residue test sooner had the district attorney requested such performance, (8) failure to argue that the lack of diligent pursuit of timely test results by the district attorney was oppressive conduct attributable to the State, and (4) failure to submit a proper “two-theory” instruction.
STANDARD OF REVIEW
¶ 30. Claims of ineffective assistance of counsel are reviewed by using the two-pronged test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, Boone has the burden of proof to show by a preponderance of the evidence that (1) counsel’s performance was deficient, and (2) that the deficiency did, in fact, prejudice the defense’s case so as to prevent a fair trial. Id.; Hall v. State, 735 So.2d 1124, 1127(¶ 6) (Miss.Ct.App.1999). In determining whether the first prong of Strickland, concerning counsel’s performance has been satisfied, we must “indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.... ” Id. at 689, 104 S.Ct. 2052. The second prong of the Strickland test requires that Boone prove prejudice by showing that there was a reasonable probability, that but for counsel’s errors, the trial court’s result would have been different. Id. at 699, 104 S.Ct. 2052. Whether the prongs of this test are met is determined by an examination of the totality of the circumstances. Id.
DISCUSSION
¶ 31. After review of the record, we cannot say that any of Boone’s assertions pass muster under the Strickland test. First, the failure to file a motion demanding a speedy trial cannot be said to have affected the outcome of the trial because the evidence obtained by the delay was arguably exculpatory. As to *524 Boone’s second and third assignments of counsel error, we follow the sound holding of the Mississippi Supreme Court that decisions to call witnesses, ask certain questions, or make particular objections fall within the purview of the attorney’s trial strategy and “cannot give rise to an ineffective assistance of counsel claim.” Carr v. State, 873 So.2d 991, 1003(¶27) (Miss.2004). Finally, as to the failure to submit a proper “two-party instruction,” we note that Boone argued in his second assignment of error that the trial court should have allowed the “two-party” theory” proposed by his counsel. We find the instruction complained of to be legally sufficient; therefore, we cannot hold that it was ineffective assistance of counsel to propose that the instruction be given to the jury as written. Furthermore, this Court will not allow a party to argue that an instruction was proper and the court’s failure to provide the jury with that instruction was in error, and in the same appeal argue that the instruction is insufficiently or inartfully worded, and therefore, an example of ineffective assistance of counsel. Such obvious contradictions will not hold weight with this Court. Considering the totality of the circumstances, the performance of Boone’s trial counsel was not deficient, nor did it prejudice his case in any way. Therefore, Boone has failed to meet his burden of proof under the two-part test set out in Strickland, and his claim of ineffective assistance of counsel fails.
CONCLUSION
¶ 32. After a thorough review of the trial court record, and having fully analyzed each of Boone’s four assignments of error under the applicable legal standards, we find each of Boone’s claims to be without merit. The trial court did not err in refusing to grant Boone’s motion to dismiss for failure to grant a speedy trial. The substance of a proper “two-theory” instruction was fully and adequately covered in the instructions given to the jury. The jury’s verdict was not against the overwhelming weight of the evidence. Finally, Boone’s assistance of counsel was not constitutionally ineffective. Accordingly, the judgment of the Circuit Court of Jackson County is affirmed.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, AND ROBERTS, JJ„ CONCUR. ISHEE,J„ NOT PARTICIPATING.

. The National Crime Information Computer (NCIC) aids law enforcement agencies in determining if a gun has been reported stolen by running the serial number through a national database.